## LYLE v. GUILLOT.
### No. 1050.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1932.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, for appellant.

Porteus R. Burke and Jacob Landry, both of New Iberia, for appellee.

ELLIOTT, J.

Marjorie Lyle went riding in an automobile with James Renoudet, which the said Renoudet had borrowed for the purpose from Frank Guillot.

Miss Lyle and Renoudet were the only occupants of the automobile. She was seated on the right-hand side of the front seat with Renoudet, who was driving. They left a night club in the vicinity of Abbeville at about 1:30 o'clock a. m. on the night of October 2, 1931, going toward the city of Lafayette. After proceeding a few miles, the automobile was turned around and they started back to the night club. On their way back Renoudet, driving heedlessly, carelessly, and at a speed which was not under control, failed and neglected, when near Abbeville, to take into account a sharp turn in the road, with the result that the car was overturned and Miss Lyle was badly injured.

The automobile in question belonged to Frank Guillot and was loaned by him gratuitously to Renoudet.

Miss Lyle brought suit for damages against Guillot, the owner of the car.

She alleges that said automobile at the time it was overturned was being driven by said Renoudet at an unlawful, wanton, heedless, reckless, excessive rate of speed, in disregard of all caution, prudence, and laws of the road. That she protested to said Renoudet against his driving and admonished him to be more careful and heedful, but that he, superinduced by the fact that he was at the time under the influence of intoxicating liquor, did not heed her protest. That said Guillot knew, at the time he loaned and intrusted his automobile to said Renoudet, that it was for the purpose of taking her for a ride, and knew that said Renoudet had been drinking intoxicants and was not in a mental and physical condition to safely operate an automobile. That the subsequent conduct of said Renoudet could not have failed to be anticipated at the time by said Guillot. That said Guillot was grossly unmindful, criminally neglectful, and was acting in concert with said Renoudet in imperiling her safety by loaning him his automobile.

That said Guillot was guilty of an aggravated act of criminal negligence and fault in giving, lending, and intrusting his automobile to the said Renoudet for the purpose of taking her for a ride. That the fault of said Guillot, in lending his automobile in the way stated, brought about her injury and makes him responsible for the same.

She estimates her loss, expenses, and damages at $5,000, and prays for judgment against Guillot for said amount.

■ The defendant appeared and filed an exception of no cause of action, but the minutes of the lower court do not show that it was acted on. It is not mentioned in defendant's brief and we therefore look on it as having been abandoned and do not give it further notice.

Defendant filed an answer in which he denies liability to plaintiff. He admits that he loaned his automobile to Renoudet, but denies all the plaintiff's other averments on the subject. He denies that he was negligent in lending and intrusting his automobile to Renoudet, but in the event the court holds otherwise, he then in that event urges that plaintiff herself was negligent and is barred from recovery by her contributory negligence, in that if the said Renoudet was intoxicated, she knew it, and went riding with him alone, with full knowledge of his incapacity. That with said knowledge she entered and remained in said automobile as his (Renoudet's) guest and was guilty of contributory negligence in doing so.

The conclusion of the lower court was that Renoudet was intoxicated at the time he operated the automobile; that he was mentally and physically incapable of driving it in safety and was unfit to be intrusted with it for

the purpose of taking a young lady for a ride. That defendant knew or should have known of the condition of said Renoudet at the time he loaned him his automobile and his purpose in borrowing it. That in lending Renoudet his automobile he knew the risk and danger to which he was thereby subjecting plaintiff and that defendant thereby made himself responsible for her injuries.

Judgment was rendered in favor of the plaintiff against the defendant for $3,290. Defendant has appealed.

The case presents serious questions for thought and reflection.

The plaintiff and young Renoudet at the time of the occurrence were each about 21 years of age. It will serve no useful purpose to go into the details of the injuries sustained by Miss Lyle; she has suffered long and excruciating pain, permanent injury, and disfigurement.

Neither will any good be done by going into the conduct of young Renoudet in driving carelessly and heedlessly at a speed not under control, and imperiling the life of the young lady who had intrusted herself to his care.

As to his fault in the matter of the accident and injury to the plaintiff, there can be no doubt; but he is not a party to this suit.

The question is whether the "act" of Guillot in lending his automobile to Renoudet amounted to a "fault" within the sense and meaning of the law, Civil Code, art. 2315, thereby obliging him to repair the damages which Miss Lyle has sustained. As for the testimony of Miss Lyle that she protested to Renoudet against his driving, admonished him to be more careful, we accept her testimony as true; but the evidence does not show that Renoudet was intoxicated, nor mentally nor physically unfit to be intrusted with the car. But even if we go so far as to suppose that Renoudet was intoxicated, unfit, and unsafe to be intrusted with a car, there is no evidence to show that the defendant Guillot knew that he was in an intoxicated condition at the time he loaned him his automobile, and unfit and unsafe to be intrusted to drive same.

The evidence also fails to show that Guillot knew or had reason to apprehend, when Renoudet asked him to lend him his automobile, that it was for the purpose of taking Miss Lyle or anybody else for a ride. The purpose which Renoudet had in mind does not directly appear, but may be assumed from the fact that upon obtaining the car, he immediately took Miss Lyle out for a ride.

The evidence shows that Alphonse Landry was Miss Lyle's escort in going to the club.

After dancing with Renoudet at least twice, at the conclusion of her last dance with him,

she asked him about her date, and by which we understand she meant Mr. Landry.

Landry, it seems, was not present, and Renoudet after looking for him, failed to find him, upon which he (Renoudet) offered to take her for a drive.

She accepted his invitation; Renoudet borrowed from Guillot his car, she got in it, and they rode away together.

We infer from the testimony that in dancing with Renoudet, at the conclusion of which she expressed a wish to go outside, on account of the air, that she was near enough to him to have found out if he had been drinking liquor to any appreciable extent.

The evidence does not show that Renoudet, while at the night club, did or said anything calculated to cause others to think him intoxicated.

The plaintiff in giving testimony on the subject, says:

"Q. Miss Marjorie, when you were dancing with James Renoudet did you perceive that he had been drinking?

"A. I did not.

"Q. When did you first perceive that he happened to be under the influence of liquor?

"A. After we were out in the car and we had turned.

"Q. What made you believe that he had been drinking?

"A. Because he was driving recklessly. And he began handling the car in a manner in which no one that was sober would have done.

"Q. What was your reaction to that discovery?

"A. Why, I asked him to turn the car around and go back. I have never driven with anyone that was drunk before."

Renoudet, questioned about his condition, declares in his testimony that he did not consider himself intoxicated.

The evidence shows that Renoudet went to the night club with Guillot and some other young men; that Miss Lyle was not of their party.

■ When Guillot and Renoudet and the others forming their party reached Abbeville, they each drank a couple of bottles of home brew-beer; but the evidence does not indicate that this beer was intoxicating, and in the absence of any evidence at all indicating that it was, we must suppose that in conformity with the law on the subject, it was not intoxicating.

After drinking this beer, Guillot, Renoudet, and the others of their party repaired to the night club. After getting to the club Renoudet separated himself from Guillot and the others with whom he had come to the place. After

Renoudet left them it appears that Guillot and those remaining with him procured a couple of pints of whisky, which they drank; but Renoudet was not with them at the time and did not participate with them in drinking the whisky, and no witness was produced who testified that Renoudet was seen to take a drink of whisky or wine or any other kind of intoxicating liquor at any time during the night in question, and nobody saw him in company with anybody who did. Nobody saw him conduct himself in such a way as to justify the inference that he was intoxicated or under the influence of liquor.

On the trial of the case Renoudet testified that he had taken a couple of "high balls." We understand that "high balls" is another name for whisky, but the quantity contained in one is not estimated.

Nobody was produced with whom he had taken a highball or who had seen him take these drinks or who had given, sold, or put anything of the kind within his reach.

The evidence leads us to the inference that Renoudet feels a friendly interest with the plaintiff in the result of this suit; that he understood at the time of testifying the necessity the plaintiff was under of showing that he was drunk and mentally and physically incapacitated from driving a car with safety; that his condition in this respect was known to Guillot at the time Guillot loaned him his automobile; and that Guillot further knew or should have known that he was going to use his automobile for the purpose of taking Miss Lyle for a ride, in order to place upon Guillot responsibility for her injury. In a statement about what he had been drinking, made just after the accident, he admitted drinking beer, but said nothing about whisky. Questioned about it again by attorneys and an agent for defendant just before the trial, he said nothing about having had any whisky. We feel satisfied from the evidence that Renoudet was not intoxicated, nor under the influence of liquor, at the time he asked Guillot to loan him his car, obtained it, and took Miss Lyle out as his guest for a ride. His testimony concerning the borrowing of the automobile is as follows:

"Q. Just state why you asked Mr. Guillot to lend you his car?

"A. We were dancing in the place and it was just a small place and I was dancing with Miss Lyle and she said it was hot and she could not find her date and I said 'Don't you want to go out and get some air?'

"Q. And you went over to the table and asked Frank Guillot for his car?

"A. Yes, Sir."

But that is all he says on the subject. His testimony does not show that Guillot knew the purpose for which the car was to be borrowed. Guillot was not asked anything on the

subject. Guillot may have known it and Renoudet may have told him; but if so it does not appear from the evidence, and nothing that we can gather from the record seems to justify such an inference.

The evidence brought out the fact that Renoudet had been driving automobiles for several years and evidently was an experienced driver. The record therefore does not justify holding that defendant had knowledge or right to suppose or believe that he was doing something unsafe and that he imperiled Miss Lyle in lending his car to Renoudet within the reason for the decision in Baader v. Driverless Cars, Inc., 10 La. App. 310, 120 So. 515.

█ The defendant made a gratuitous loan of his automobile for use, under our law. Civil Code, arts. 2891, 2893. A gratuitous loan for use makes the borrower, after delivery, the master of the thing borrowed, for the purpose of its use and while using it under the loan. This mastership seems to further result from the provision in article 2906, according to which the lender cannot claim back the thing loaned from the party to whom it has been loaned, during the period of time for which the loan was made.

The facts in the present case are similar in principle to the facts found to exist in Davis v. Shaw (La. App.) 142 So. 301, July 7, 1932. In that case there was a gratuitous loan and heedless, careless, and reckless driving on the part of a borrower, causing injury to another. The court held that the lender of the car was not responsible to the party injured.

In Atkins v. Points, 148 La. 958, 88 So. 231, 232, the court approvingly quotes from Ruling Case Law the following: "Hence, if the employer lends his vehicle to his employee to be used by the employee about his own affairs, the employer will not be liable."

The case Atkins v. Points is cited in Cyclopedia of Automobile Law by Blashfield, vol. 2, p. 1320, § 5, from which we quote as follows:

"Something more than ownership of a motor vehicle is required to establish agency or the relation of master and servant between the owner and the borrower or hirer negligently operating it. And in the absence of any statute providing otherwise the owner of a motor vehicle is not liable for injuries to a stranger occurring from the negligent use of a machine by the chauffeur or driver to whom the machine has been loaned while it is in the possession of the borrower or hirer and not connected in any way with the owner's business and not under the control of the owner.

"Accordingly an owner, who rents or loans a machine to be operated by the employee of the hirer or borrower, over whom the owner has no control, is not liable for the negligence of such employee in operating the machine. So,

where an owner rented motor cars to chauffeurs, who paid him a stipulated sum per day, but used the cars for their own purposes, the owner was not responsible for injuries to a third person resulting from negligent operation by a chauffeur."

The judgment appealed from is contrary to the law and the evidence, and therefore erroneous.

For these reasons the judgment appealed from herein is annulled, avoided, and set aside, and it is now decreed that the demand of the plaintiff Marjórie Lyle against the defendant Frank Guillot be refused and rejected, at her cost in both courts.