## GARTMAN v. TRAYLOR et al.
### No. 5109.

Court of Appeal of Louisiana. Second Circuit.
Dec. 13, 1935.

H. W. Ayres, of Jonesboro, for appellant.

Abe Berenson, of New Orleans, for appellee Houck.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee Traylor.

DREW, Judge.

Plaintiff instituted this suit individually, and also for the use and benefit of his minor son who was injured in an automobile accident. The defendants are the father of the minor who was driving the car in which plaintiff's son was a guest, and the owner and driver of the car which collided with that in which plaintiff's son was riding.

The defense set up by the two defendants, in separate answers, is a denial of any negligence on their part. Defendant Traylor pleaded, in the alternative, contributory negligence on the part of plaintiff's son. Defendant Houck did not plead contributory negligence, and the pleadings in this respect as to him were not enlarged, due to timely objection on the part of plaintiff.

The lower court, in a well written opinion, awarded judgment to plaintiff against the defendant Houck, and rejected plaintiff's demand against Mrs. Traylor. The opinion of the lower court correctly states the pleadings and facts and applied the law applicable. It is as follows:

"This suit arose out of an automobile collision which occurred in the corporate limits of the town of Columbia on the 8th of September, 1934, and in which the minor son of the plaintiff received certain personal injuries. The plaintiff brings this suit individually and also for the use and benefit of his minor son, David Gartman, for the personal injuries sustained by his son in said accident and for dental work that was necessary to restore teeth that were lost by his son in the accident.

"The plaintiff has brought this action against both the defendant J. N. Houck and defendant Mrs. Lizzie Traylor as joint tort-feasors in the amount of eight thousand five hundred ($8,500.00) dollars.

"J. N. Houck owned and operated a picture show in the town of Columbia, and same was managed and operated by Elton Houck, a young man sixteen years of age. In the management of this show it was his duty to distribute advertising matter, notices and stick up posters advertising the various pictures that would be on display at his theater. In the afternoon of September 8, 1934, when Elton Houck placed certain advertising material in his Dodge coupé preparing to go to a nearby town in the vicinity of Columbia for the purpose of advertising the coming show, young Gartman inquired of Houck whether he wanted him to go with him in the distributing of the advertising matter. He was informed by young Houck that he did not need him but if he so desired he might accompany him. These two boys, after placing their advertising matter in the Dodge coupé, proceeded south from Columbia on

route No. 165 to the town of Grayson, a distance of about 5 miles from Columbia. On their route they stuck up posters and in Grayson they distributed certain advertising matter. After distributing the advertising material, they returned north towards Columbia over route No. 165, and, according to Houck's testimony, they traveled at a speed ranging from 40 to 70 miles until they reached within 125 feet of the place of the collision of Houck's car with that of the defendant Mrs. Traylor. Mrs. Traylor had left the business section of the town of Columbia accompanied by her daughter, Mrs. Wooten, who was riding in the front seat with her mother; their intentions being to go to Grayson. In going to Grayson they would travel in a southern direction along Kentucky street, which is known as Louisiana Highway Route No. 165, with the intention of turning off at Church street for the purpose of taking a daughter-in-law with them to Grayson. Mrs. Traylor and her daughter both testified that as they passed out of the business section of the town of Columbia going south along Kentucky street and route No. 165, and just as they approached the intersection of Church street with Kentucky street a truck blew for the purpose of passing. Defendant Traylor turned her car to the extreme right, probably with her right wheels off the pavement, and stopped a short distance beyond the place to make the turn to go into Church street. In making this turn she would necessarily have to turn to the left, as the west end of Church street comes into Kentucky street at this point. Immediately after the truck passed she backed her car up a few feet and stopped and then looked, as both witnesses say, both to the north and to the south to see if there were any cars approaching, and seeing no cars, she turned to the left and drove across from the right hand side of Kentucky street going south to the left hand side of the street, and as the front wheels of her Ford car passed off the left hand side or east side of Kentucky street her car was hit at the front wheels by the oncoming Dodge coupé from the south. She further testifies that when she started to make the turn that she not only looked in both directions but held her hand out to show that she was making a turn to the left.

"Coming from the south along Kentucky street or highway No. 165, before you reach the intersection of Kentucky and Church streets is a sharp curve in Kentucky street or highway No. 165. This curve is very pronounced, and the highway commission has caused to be placed on the right hand side of the road along this bend coming from the south a wire fence as a guard rail, which is 272 feet long. The intersection of Kentucky street and Church street is 115 feet north of the north end of the guard rail around this curve. This would make a distance from the intersection of the two streets to the southern end of the guard rail fence of 387 feet.

"According to the testimony of Elton Houck and David Gartman they were returning from Grayson along highway route No. 165, and had traveled route No. 165 or Kentucky street in the town of Columbia more than a quarter of a mile at the time of the collision. Houck and Gartman both say that they saw defendant Traylor's car in the road when their car was about the middle of the guard rail and that the defendant Traylor's car was making the turn. At the north end of this guard rail, which is 115 feet from the collision, Houck applied his brakes and skidded his car for 25 or 30 feet, and at this point defendant Traylor's car stopped in the street; that Houck, thinking that the Traylor car had stopped to permit the Houck car to pass, then released his brakes from 30 to 40 feet. After this the Traylor car proceeded its left hand turn, going east into Church street, and when young Houck noticed this he applied his brakes and skidded his car for 30 feet, but was unable to stop his car until the collision happened.

"There were other witnesses around plaintiff's garage who were either working for the plaintiff or had been working for him. Young Lovett saw the Traylor car come from the north and stop opposite Church street to permit a truck to pass, and immediately after the truck passed the Traylor car began to make the left hand turn and his attention was then directed to the Houck car by hearing the screeching of the brakes and the blow of the horn from the south. He and the other witnesses said that Houck blew his horn and applied his brakes about the north end of the guard rail, and then apparently released the brakes for a short time and then again reapplied the brakes.

"The plaintiff was not present, but he inspected the scene immediately after the accident and he found that a car, coming from the south, at the time it reached the north end of the guard rail had applied

its brakes as the imprint of the tires were left on the pavement, showing they had skidded about 30 feet, then there was an apparent break in the signs of the skidding on the road, and about 30 feet from the place where the collision happened he found other evidence of where the wheels had skidded on the road for at least 25 or 30 feet.

"After the accident, Mr. C. W. Traylor, a son of the defendant Traylor, Bill Chadwick and Phil Gregory came to the scene of the accident and made an inspection, and according to their testimony Houck's car skidded from the north end of the guard rail to the place of the collision. The skidding of the wheels in the middle of this distance was not as pronounced as it was at each end, but the signs on the road were very pronounced and sufficient to show that the car had skidded the entire distance.

"The Traylor car, as it attempted to turn, was making from 3 to 5 miles per hour, or traveling a distance of about 40 feet before the collision. This would make her car travel at the rate of about 5.8 feet per second, and from the time she started to turn until the time her car was struck by Houck's car would be about 7 seconds. Houck's car, if traveling at 40 miles an hour, would be making around 58½ feet per second, and in these seven seconds it would have traveled a distance of 409 feet. At this calculation the Houck car had not reached the southern end of the guard rail, which was 387 feet from the accident, at the time the Traylor car began to turn to the left. The speed of these cars seems to corroborate the testimony of Mrs. Traylor and her daughter, Mrs. Wooten, that at the time Mrs. Traylor began to turn her car to the left she was not able to see any cars coming from the south, as her vision to the south would not extend beyond the southern end of the guard rail. Connecting the testimony of both Houck and Gartman with that of Mrs. Traylor and her daughter, Mrs. Wooten, and with the testimony of the three witnesses who testified that there were pronounced signs on the pavement showing that the Houck car had skidded from the northern end of the guard rail to the place of the accident also bears out the fact that Mrs. Traylor did look to the south and saw no oncoming cars at the time she began to make her left hand turn. If the Houck car skidded 100 to 115 feet from the northern end of the guard rail to the place of the accident, we are forced to the conclusion that Houck's car was traveling at a greater rate of speed than 40 miles an hour just prior to the time it reached the northern end of the guard rail, for if the car had been only traveling at the rate of 40 miles, same could be stopped by skidding the wheels before it traveled 115 feet. Young Gartman testified that just at the northern end of the guard rail, as the brakes were applied, he looked at the speedometer and at that time the car was going 40 miles an hour. While he stated his reason for looking at the speedometer was due to the fact that both his mother and father objected to his riding faster than that, it is surprising that he waited until he was just in front of his father's garage before looking. We are rather forced to the conclusion that he looked at the speedometer after Houck had applied his brakes very strongly, and after they were applied he then looked and the car was running 40 miles an hour. We think that the defendant Houck was driving at an excessive speed, especially in an incorporated town. The ordinance of the town of Columbia, in which both Elton Houck and David Gartman resided, provides that 12 miles per hour shall be the speed limit through the corporate limits of Columbia, and they evidently were familiar with the ordinance. The Highway Act of 1928 (Act No. 296 of 1928) provides that in passing through towns and especially residential sections of towns, the speed shall not exceed 20 miles per hour unless the municipal authorities by proper ordinance have permitted such speed, and this act certainly would supersede the ordinance of the town of Columbia, which provided for a 12-mile speed limit. The Highway Act, No. 61 of 1932, repealed act of 1928. This act permits municipalities to regulate the speed limit and we are inclined to think that after act of 1928 was repealed the ordinance of the town of Columbia again was operative. Whether this ordinance was operative or not makes little difference, for the law especially provides that one approaching an intersection of roads or streets must have his car under full control whereby he will be able to stop on instant notice.

"In Loewenberg et al. v. Fidelity Union Casualty Co., 147 So. 81, 86, the Court of Appeal says:

" 'The courts of this state have repeatedly held that a motorist, on approaching an intersection, must reduce the speed of his car to a speed which will give him such

control of his car as to allow him to stop the car at the shortest possible notice. One street does not have to entirely cross another to be an intersection, under Act No. 296 of,1928. It is defined as a place where two or more highways or streets join one another.'

"The defendant Elton Houck certainly violated this provision of the law, as according to his version he was traveling at the rate of 40 miles an hour on the 115 feet from the guard rail to the intersection of Church and Kentucky streets. We think he was traveling faster, for the reason that he was unable to· stop his car and skidded same for the entire distance, and after traveling the distance of 115 feet with his brakes applied, his car hit the Traylor car which then was going east, and knocked the Traylor car entirely around towards the north. The impact of Houck's car against the Traylor car being sufficient to turn the Traylor car in the opposite direction, he must have been driving his car at the rate of 20 or 25 miles an hour at the time of the impact. The impact of his car against the Traylor car was so great that it not only turned the Ford in the opposite direction, but threw young Gartman forward, hitting the iron just below the windshield, and his head hit the windshield with such force that it broke the windshield and knocked two of his upper front teeth out of his mouth and broke off two other upper front teeth, and also knocked loose four of his lower front teeth. The fact that Houck's car struck the Traylor car with this much force indicates it must have been traveling at a rather high rate of speed at the time of the impact. We therefore find that the defendant Houck, by his excessive speed through the corporate limits of the town, and especially in approaching an intersection of Church and Kentucky streets with such excessive speed, was guilty of gross negligence. We are not able to say that the defendant Mrs. Traylor was negligent in making the left hand turn, as the preponderance of the evidence shows that before she began to make the left hand turn she looked in both directions and was not able to see cars approaching from either direction, and after this she began to make her turn, and thereafter her attention was directed in front of her and not to the side in driving the car forward.

"In the case of Reed v. Kraak, 11 La. App. 555, 123 So. 407, the Court of Appeals said:

"'When plaintiff reached the intersection, he stopped and looked, and, there being no vehicles in sight, he proceeded to cross Lafitte street. When he had crossed the center of Lafitte street and was nearing the further side, his automobile was suddenly run into, and struck about the rear fender by that of defendant. He was injured about his person and his automobile was partly wrecked. It is admitted that defendant's automobile was moving at a speed of 35 miles per hour, and defendant's son concedes that at the speed he was going, he could not turn aside or prevent the collision. * * *

"'It appears * * * that Lafitte street is one where traffic upon it has the right of way. We understand that this right of way simply means that cross-traffic reaching the intersection about the same time must yield precedence to the traffic on Lafitte street, and nothing more. It does not mean that traffic on cross-streets must wait until vehicles several hundred feet away go past the intersection before it can enter upon Lafitte street.'

"Fontanille v. Ducote (La.App.) 155 So. 46, 47. In this case the court, passing on the question of a left hand turn at an intersection, said:

"'We find no . negligence in the action of the young man. After he looked in the direction from which plaintiff was coming and for a distance of 85 yards did not see any car, he was justified in entering the highway, for he well knew that, if a car was coming from that direction and was observing the speed law, he would have sufficient time to enter and get straightened out on the road before it could reach him. He had the legal right to presume that any one who might be coming from that direction, and was at that time farther than his vision carried, would not violate the law.' McDonald et al. v. Stellwagon (La.App.) 140 So. 133.

"As the defendant Traylor stopped and looked in each direction before beginning her left hand turn and seeing no car either direction, she was not guilty of negligence and therefore did not contribute to the collision. But the excessive speed at which Elton Houck was driving his car approaching an intersection of Church and Kentucky streets was the proximate and immediate cause of the collision.

"For these reasons plaintiff's case against the defendant Traylor will be dismissed at his costs.

"Having found that the proximate cause of the accident in which young Gartman received certain personal injuries was the excessive speed at which Elton Houck was driving his car when approaching the intersection of Church and Kentucky streets, his employer, J. N. Houck, would be liable to the plaintiff in damages unless David Gartman is guilty of contributory negligence. The defendant J. N. Houck has pleaded no contributory negligence against David Gartman, and therefore none can be shown. For these reasons, we think the defendant J. N. Houck is liable in damages.

"The amount of damages is hard to determine. The plaintiff will be forced to expend $125 for the replacement of the teeth, the four upper front teeth that were lost by his son. Two teeth were knocked out entirely and two more were broken off so that they will have to be extracted and all replaced with false teeth. Damage was done to his lower teeth, but most likely these will become firm and strong, according to the testimony of Dr. Adams, the dentist. The boy is just fourteen years old and the court thinks probably these lower teeth were only temporarily damaged. The loss of the front teeth by a young man is a very great loss. Our courts have held at times that $500 was not excessive price for the loss of a tooth. We feel, however, in this case that $400 would be ample compensation for each tooth, making an aggregate of $1,600. For these reasons there will be judgment against the defendant J. N. Houck and in favor of the plaintiff individually for $125, and for $1,600 for the use and benefit of his minor son, David Gartman. (See decree.)

"F. E. Jones, Judge."

From a judgment rendered and signed in accordance with the opinion above quoted, the plaintiff alone appealed, and in this court asks that the judgment rejecting his demand against Mrs. Traylor be reversed and that he have judgment against her in the full amount prayed for; that the amount of the award against defendant Houck be increased to a like amount; and that the two defendants be held liable in solido as joint tort-feasors.

Defendant Traylor appeared by argument and brief and asked that the judgment as to her be affirmed. There was no appearance on the part of the defendant Houck.

After a careful study of the record, we find the judgment of the lower court correct in all respects, and it is affirmed; costs of appeal to be paid by plaintiff, appellant.