**BENTON et al. v. GRIFFITH et al.**

**No. 1898.**

Court of Appeal of Louisiana. First Circuit.

Nov. 17, 1938.

Albritton & Hardin, of Baton Rouge, and St. Clair Adams & Son, of New Orleans, for appellants.

Wm. A. Benton, of Baton Rouge, for appellees.

DORE, Judge.

The plaintiffs, Mrs. Benton and her husband, McVea R. Benton, filed a suit against P. H. Griffith, Sr., and the Massachusetts Bonding and Insurance Company, the former for $7,500 for personal injuries, and the latter for damage to his automobile and expenses incurred on account of the injuries received by his wife, in the total sum of $925.10. This suit was filed on March 30, 1937, and bore the docket number 11,-963. After the filing of several motions, exceptions and an answer by the defendants in that suit, and the filing of several motions and supplemental pleadings by the plaintiffs, the suit was dismissed as in case of non-suit on motion of the plaintiffs on May 28, 1937.

On the same day, May 28, 1937, the present suit was filed by plaintiffs for the same amount and based on the same cause of action as the first suit, and in this last suit P. H. Griffith, Jr., was joined with the other two defendants. The petition alleges that Mrs. Benton sustained serious personal injuries, described in the petition, on January 25, 1937, when the car in which she was riding, owned and driven by her husband, was run into on the Jefferson Highway about one mile southeast of the city limits of Baton Rouge around 6:30 o'clock P. M., by a car coming in the opposite direction and driven by the defendant P. H. Griffith, Jr.

The negligence charged against young Griffith is that he was driving on the wrong side of the road and without keeping a proper lookout; that he was in an intoxicated condition and was driving at an excessive rate of speed. The father of young Griffith is sought to be held on the ground that the son was driving the car with the permission and consent of his father while a member of his father's household and as the agent of the father acting within the scope of his agency. The allegation is fur-

ther made that young Griffith is a habitual drinker of alcoholic liquors to the knowledge of his father, and as such, in the alternative, it is alleged that at the time young Griffith was an unfit, unsuitable and dangerous person to drive a car to the knowledge of his father. It is not alleged nor claimed that young Griffith was a minor. The bonding company is sought to be held as the insurer of P. H. Griffith, Sr., against public liability on the car driven by young Griffith.

Defendants filed a motion to strike out that part of the petition which alleges that P. H. Griffith, Jr., is an habitual drunkard and was an unfit person to drive a car to the knowledge of his father. Defendants also filed an exception of vagueness. Both the motion and the exception were overruled. The defendants filed separate answers; the bonding company making what is equivalent to a general denial; P. H. Griffith, Jr., denied that he was guilty of any negligence, and alleged that he was attempting to pass a car in front of him going in the same direction, and just as he pulled to the left to pass the slow-moving vehicle in front of him, he saw the Benton car coming in the opposite direction at a distance of approximately twenty feet; that the reason he did not see the Benton car earlier was because it did not have any headlights burning and a rain was falling. He alleges that the proximate cause of the accident was the negligence of Benton in driving his car without lights, and in the alternative, young Griffith alleges that if he was guilty of any negligence which he denies, both plaintiffs were guilty of contributory negligence; Benton in driving his car in a heavy rain at night without lights, and Mrs. Benton in riding in this car under such conditions. P. H. Griffith, Sr., made a general denial of liability and specially denied that his son was acting as his agent, or in any other capacity that would render him liable for the acts of P. H. Griffith, Jr.

After the defendants had answered, plaintiffs filed a supplemental petition (which through inadvertence was given the docket number of the first suit) in which they alleged that the insurance policy issued by the defendant bonding company was issued in the name of the wife of P. H. Griffith, Sr.; that the automobile covered by the policy and involved in the collision was community property and was purchased by Mrs. Griffith with the knowledge and consent of her husband, or in the alternative,

that her husband ratified and confirmed the purchase of said car by his wife in her name; and further in the alternative, that Mrs. Griffith is a member of the Griffith household and the mother of P. H. Griffith, Jr., who was driving the insured car at the time of the collision with her consent. Further exceptions were filed by the defendants and overruled by the court.

After a trial on the merits the court rendered judgment against all three defendants, in solido, in favor of Mrs. Benton for $5,850 and in favor of Mr. Benton for $920.10. All three defendants have appealed.

There are four principal questions presented in the case: (1) Whether or not P. H. Griffith, Jr., was guilty of negligence which was the sole and proximate cause of the accident; (2) if young Griffith's negligence was the cause of the accident, is his father also liable under the pleadings and the evidence; (3) is the bonding company liable for the negligent acts of young Griffith; and (4) if there is liability on the part of any or all defendants, is the amount of damages awarded by the trial court excessive?

On the first point, we have no difficulty in reaching the conclusion as did the trial judge, that the negligence of young Griffith was the sole cause of the accident. There is some testimony to show that young Griffith had been drinking and was under the influence of liquor at the time of the accident. However, regardless of the question of whether or not this young man was under the influence of intoxicating liquor at the time to a sufficient extent to affect his driving, the testimony abundantly shows his negligence. He admits that his car was on his left or wrong side of the road when it was struck by the Benton car. He claims that he was passing another car and had pulled his car over to the left for that purpose when he was suddenly confronted with the Benton car coming from the opposite direction on its right side of the road. He attempts to excuse his failure to see this approaching car by saying that it had no lights burning. But he is the only witness who says that there were no lights on the Benton car. Both Mr. and Mrs. Benton state that the lights on their car were burning, and another witness who was following the Benton car only a few feet behind corroborates the testimony of the two plaintiffs by saying that the tail light on the Benton car was burning after the col-

lision, although he could not say if the headlights were burning before the collision. It is reasonable to assume that, if the tail light on the Benton car was burning at the time of collision, the headlights were also burning.

Young Griffith says that he pulled his car to the left and went into the ditch on that side of the road when he saw the Benton car just a few feet in front of him; that he hit the right front of the Benton car with the right front of his car; that he was going about thirty-five miles per hour; that it was misting rain at the time, and his windshield wiper was working. It is not contended that the Benton car was speeding nor is it claimed that this car was on the wrong side of the road. The only negligence charged to the driver of the Benton car was that the lights were not on. Not only does a preponderance of the evidence show that the lights on the Benton car were burning, but it is hardly reasonable to believe that Benton would have been driving on a much traveled highway after dark and in a misty rain with his wife in the car without any lights on his car at all. The record fails to show any contributory negligence on the part of Benton.

Assuming that young Griffith was attempting to pass another car, as he claims, when he swerved over into the left lane of traffic in front of the oncoming Benton car, he was guilty of gross negligence. Act No. 21 of 1932, § 3, Rule 7, provides that the driver of a vehicle shall not drive to the left side of the road in overtaking and passing another vehicle going in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety; provided, however, that when an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the vehicle doing the passing. In our opinion, the sole cause of the accident was the negligence of young Griffith in violating this rule of the road.

On the second question relative to the liability of P. H. Griffith, Sr., for the negligence of his major son, we fail to see under what theory of law he can be held. Young Griffith was on a mission of his own. He had been to the show that afternoon after which he visited a friend from whose home he was returning when the accident occurred. There is nothing in the record to show that this young man was acting for his father, nor is there any testimony from which it could be inferred that he was acting as the agent of his father.

While the young man lived with his father and mother and was using their car with their implied consent, yet the father or head of the family cannot be held liable for the acts of his major son on any theory of the family purpose doctrine as that doctrine does not prevail in this state. Davis v. Shaw, La.App., 142 So. 301. Nor can the father be held for the negligence of his major son on the ground that the son was addicted to the use of intoxicating liquors to the knowledge of the father, as it does not appear that the father had any knowledge of the fact that the son was under the influence of liquor when he got the car, if such was the case, as the mere use by the son of a car which was borrowed from his father and mother would not render the owner of the car liable. Lyle v. Guillot, La.App., 143 So. 511.

The judgment will be amended by dismissing the suit as to P. H. Griffith, Sr.

On the third question as to the liability of the bonding company, it appears that a motion and order was filed to compel P. H. Griffith, Sr., and the bonding company to produce the policy covering public liability on the Griffith car in open court on a date named, to which order these two defendants answered that they did not have the policy in their possession, yet they knew, or should have known, who had. During the trial of the case and after being informed as to who had the policy in possession, plaintiffs filed a motion and secured an order on Mrs. P. H. Griffith to produce said policy in open court instanter. To this order counsel for defendants excepted on the ground that the order was improvidently issued and was a proceeding unknown in the practice of our courts; and on further ground that there are no allegations in the petition which would make the production of said policy relevant. The exception was overruled and Mrs. Griffith produced the policy and it is now a part of the record.

We are of the opinion that the court had full authority to require Mrs. Griffith to produce the policy. Evidently she was in court or easily available, and she suffered no injury or inconvenience by the order. Even though she be considered a third party to the suit, the court had the right to order her to produce this policy during the trial under the plain provisions of Article 475 of the Code of Practice. He

did not abuse his discretion under the circumstances, and we see no error in his ruling thereto.

■ The policy being legally in the record, it is to be considered as evidence. While the policy insures Mrs. P. H. Griffith against public liability by reason of the ownership, maintenance and use of the automobile, it also covers liability of a person using the automobile with the consent of the insured. As young Griffith was using the automobile covered by the policy with the permission of the insured, the insurer is liable for the damage caused by young Griffith.

On the fourth and last question presented, the amount of damages awarded, counsel for the defendants strenuously oppose the amounts allowed by the lower court.

■ The trial judge allowed Mrs. Benton. $350 for a strained or sprained foot. It appears that Mrs. Benton was examined by Dr. McHugh about four days and again about a month and a half after the injury at which time the injury to her left ankle had healed; the ankle was slightly swollen but she was able to use her foot without the need of crutches. At the trial Dr. McHugh again examined the plaintiff and found that all previous swelling had disappeared and the ankle was normal. Mrs. Benton said at the time of the trial that her foot would swell when she used it a great deal. There seems to be no permanent injury to her foot, and we are of·the opinion that this item is proper and sufficient.

■ Mrs. Benton lost six of her upper front teeth and had several of her lower teeth loosened. Some of her upper front teeth were driven back into the labial bone, making it necessary to remove parts of that bone. For several months, and up to the date of the trial, pieces of this bone were coming out. The removal of parts of this bone caused considerable shrinkage in the upper gum and jaw. It is rather difficult for her to use a plate satisfactorily, but after further time she may be able to wear a denture and partly correct the situation. According to the dentist who treated her, three lower teeth were fractured and one

badly shaken up, but these lower teeth were functioning very well at the date of the trial. Undoubtedly, the lady's facial appearance is very much affected from the loss of these teeth and the sink in her upper lip caused from the removal of parts of the labial bone. There is no precise precedent for the loss of a tooth as each case presents a different situation. The courts have estimated the damage for the·loss of teeth as high as $400 to $500 each. Gartman v. Traylor et al., La.App., 164 So. 660. However, these cases can serve only as guides. We are of the opinion that in this case an award of $3,000 to Mrs. Benton for the loss of six teeth, removal of the labial bone, injury to her other teeth, together with her pain, suffering and mental anguish, would be proper, making her total award $3,350.

■ As to the award to Mrs. Benton, counsel question only two items—$500 for dental work performed and to be performed for his wife, and $329 for damages to his car. The dentist says that his bill to the date of the trial was $375 and it may run as high as $500 if he has to do other work. We are of the opinion that the item should be restricted to the actual expense of $375; the remainder is too uncertain.

■ On the damage to the car, Benton says the estimate of the damage given him by the O. K. Radiator Company was three hundred and some odd dollars. Mr. Methvin of this company says the estimate of damage to the car was in the neighborhood of $300, but he did not give any detailed figures. We are of the opinion that under this evidence it would be safe to allow $300 on this item. This would reduce Benton's claim from $920.10 to $741.10.

For these reasons, the judgment appealed from is amended by dismissing the suit as to P. H. Griffith, Sr., and by reducing the amount awarded Mrs. Bernice Williams Benton from $5,850 to $3,350 and by reducing the amount awarded to McVea R. Benton from $920.10 to $741.10, and as thus amended the judgment is affirmed; the plaintiffs to pay the costs of this appeal and those incurred by the trial in so far as P. H. Griffith, Sr., is concerned; all other costs to be paid by other defendants.