MARTIN E. JOHNSON, Plaintiff, *v.* EMPLOYERS' LIABILITY ASSUR-ANCE CORPORATION, LIMITED, OF LONDON, ENGLAND, Defendant.

Supreme Court, Albany County, August 14, 1935.

*C. Bertrand Race* [*Daniel H. Prior* of counsel], for the plaintiff.

*Ainsworth & Sullivan* [*Charles B. Sullivan* and *John J. Conners, Jr.,* of counsel], for the defendant.

BREWSTER, J. On November 3, 1930, plaintiff was the owner of a Whippet automobile and of an effective policy of public liability insurance issued by defendant. This policy was in the usual form and was issued to protect him from certain liabilities that might be imposed upon him by law for damages arising out of personal injuries accidentally sustained by any person as a result of his ownership, maintenance, operation or use of his said automobile. The plaintiff's claim is that during the early evening of said day one Hubert M. Durking, a young man about his own age, his long-time friend and his then fellow-employee, took this automobile, without plaintiff's knowledge as to its actual taking,

but in pursuance of permission so to do given by him during the previous afternoon of said day; that Durking thus took the car in the hamlet of Speculator ostensibly to go to a dance at " Wellstown," at least such being the only express arrangement that had called forth such permission; that upon discovering that his automobile was gone from the street where he had parked it in Speculator, he began to walk along the highway to a construction camp where he was living near his work — a distance of some three and three-quarters miles; that while thus walking on or alongside the road he was struck by an automobile and instantly rendered unconscious. His description of the accident that befell him is: " I was walking along the road and there was some cars coming and some going, and all at once I got hit. It must be I got hit, and the next thing I knew I was in the Gloversville Hospital." His proof of the identity of the car consists of his own testimony as follows: " By Mr. Prior: Q. You didn't know then who struck you, I assume? A. I did not. Q. Afterward you brought an action against Durking, didn't you? A. Yes. Q. Do you know now who struck you? A. I do. Q. Who? A. Durking. Q. Do you know what car struck you? A. Yes, my Whippet. Q. You brought a lawsuit, did you? A. Yes. Q. And you sued Durking, did you? A. Yes. Q. For damages. And that action was tried in this court here in this building, was it? A. Yes, sir. Q. And you recovered a verdict, did you? A. I did. Q. How much? A. $18,000. Q. That is what the the jury gave you? A. Yes, sir. Q. Against Durking? A. Yes."

On the 27th day of March, 1931, or so it appears on my examination of the exhibits, the plaintiff began a prior action against Durking, and the latter retained an attorney who was a friend of the family, one Frank Morehouse, to defend him. It appears that this action was never brought to issue, and for some reason it was discontinued by stipulation. This appears to have been on December 5, 1931, although the stipulation carries no formally stated date. Thereafter and on or about the 16th day of December, 1931, plaintiff began another action against Durking, in negligence, venue laid in Albany county. (In the exhibits submitted it appears that counsel omitted the summons and complaint in the basic action.) Durking defaulted in appearance and at an inquest at Trial Term in Albany county, plaintiff secured an award of $18,000 for damages resulting in a judgment in his favor against Durking for $18,070.50, perfected and docketed in Albany county on March 28, 1932. The judgment remaining unpaid, this action was then brought by the plaintiff, the named assured in the aforesaid policy of public liability, to recover the limit

thereof on account of his judgment against Durking under right so to do which he claims to be afforded him by the provisions of section 109 of the Insurance Law. This action is grounded upon the contention that the " Omnibus Cover " provisions of his policy permits him as the named assured to stand in the position of any one of the public receiving bodily injuries as a result of the operation of the named automobile when, outside and away from it, he is injured by its operation by his licensee or permittee. Plaintiff had a verdict for the limit of the policy and the costs of his prior action against Durking.

The pending motion to set that verdict aside as against the weight of evidence directs attention to issues of fact not commonly present in such an action. The defense was that the accident as proven by the plaintiff in his action against Durking and as testified to upon the trial herein never happened at all; that the bodily injuries plaintiff sustained on the night in question were not proximately caused by the operation of his own automobile, or, if they were, they were sustained at such an altogether different time and place and under circumstances so utterly different as to constitute the rendered judgment wholly procured by false and perjured testimony and, therefore, a fraud and imposition upon the court. This issue was allowed for trial. The question was whether the accident happened substantially as related by the plaintiff. If so, it was held that he could recover at the trial herein. The motion to dismiss on the ground that the provisions of the policy did not permit the action was reserved. No retrial of the issue of Durking's liability for negligence in such case was permitted — no such collateral attack on the judgment being allowed. But, I held that if the accident as claimed by the plaintiff on both trials never happened and he sustained his injuries under the circumstances as shown by the defendant's proofs, as to which the defendant held the burden of proof, then, that as regards this action there could be no recovery — that such an attack on the judgment was not prohibited by the general rule.

It is the jury's decision upon this issue that here concerns me. As regards this, the jury had, on the one hand, only the testimony of plaintiff. It was weak, uncertain and, to any impartial observer, I feel constrained to hold it was improbable and rather unconvincing. In support of this appraisal of his testimony, I cite the following:

1. The casualness, uncertainty and indefiniteness of the permission given to Durking to take the car. Thus is wholly contained in his direct testimony, as follows: " He says to me, ' Let's go to a dance to-night.' I said, ' Where is the dance?' He says, ' To

Wellstown.' And I says, ' I don't feel like going to no dance, because I just came here and I don't feel able to go.' And he told, he, I told him I didn't feel able to go, and he said to me, ' Oh, come on let's go.' ' No,' I said, ' if you want to go to the dance go ahead and take the car and go to the dance.' " Time and again he repeated that the foregoing embraced all the talk between him and Durking which had to do with the latter's permission to take his automobile. This is further illustrated by the court's questions and his answer as follows:

" By the Court: Q. Let me get this straight. When you were over there getting cigarettes, that is the time your car disappeared? A. Yes, sir. Q. When you came out and saw your car was gone? A. Yes. Q. And you didn't know of your own knowledge who had taken it, did you? A. I did. Q. You didn't see it taken? A. No, I didn't see it taken. Q. Did you know when you went in after the cigarettes that Durking was going to take your car? A. No, I didn't know he was going to take it, but I told him in the afternoon he could take it. Q. You told him that in the afternoon? A. Yes, sir. Q. But you didn't know that he was about to take your car while you were in the store after the cigarettes, did you? A. No, I didn't. Q. So when you came out you didn't know who had taken it? A. No. Q. But you suspected that it was Durking? A. Yes. Q. That he had finally accepted the offer that you had given him in the afternoon? A. Yes."

2. The improbability of his description of the actual taking by Durking. He testified that he, Durking, and another rode from the construction camp to Speculator after their evening meal; that he went there to get a haircut; that together they entered the barber shop; that he, plaintiff was first served and then left and went across the street to the tobacco store; that his car was then parked on this street in front of both places; that he stayed in the tobacco store, at one time he said half an hour and at another time he put it as short as five or ten minutes; that when he came out of the store his car was gone, and so he started to walk back to the construction camp, although on his way back his own automobile overtook and hit him. Wellstown appears to have later been identified as Wells, and it is situated in a direction from Speculator opposite to the course from Speculator to the construction camp. The improbabilities here seem obvious.

3. The categorical method he employed, even though without objection, to identify his own automobile as the one that struck him down.

4. Another blemish to his testimony was his persistence in placing the construction camp one-quarter or a half mile from Speculator

and the distance that he had gone when he met with the accident. Plaintiff was a native of Indian Lake and owned an automobile. He seemed generally intelligent and shrewd as a witness, but his ignorance of what seems must have been certain to him in that connection and an apparently studied effort to relieve from one glaring improbability in his story, to my mind accounts for the confusion in his testimony in this respect and likewise explains his many equivocations.

5. His unsatisfactory and improbable explanation of his signed statement which he gave to a representative of the defendant, as well as the time and circumstances of the taking of said statement and his failure to corroborate his theory and claims respecting it when, for ought that appears, corroboration would have been easy for him to furnish.

6. His denial that he knew that Durking had no license to operate his automobile. His subsequent admission that he had heard of it and then thereafter his recantation in that regard.

7. His gross uncertainty regarding the movements of Durking after, as he says, " We both entered the barber shop." On one occasion he said that Durking was still there; on another occasion he said that he was not there, and, finally, that he did not know.

The foregoing and many other instances of uncertainty and equivocation throughout his testimony prompt my appraisal thereof as herein first stated.

As against this testimony, we have, *first*, Durking, who testified against his own interest. *Second*, the keeper of the jail at Lake Pleasant, one Pelcher, who certainly was disinterested, and, because of the subject-matter of the testimony he gave, it would seem that if it was not, technically, against his interest, certainly he testified in regard to certain matters when he would have preferred to have kept silent. *Third*, Renney, the keeper of the gas station at Speculator, a disinterested witness, who testified that he saw both Durking and plaintiff in the latter's automobile as late as nine-thirty at Speculator and that they were in a somewhat intoxicated condition. Plaintiff placed the accident at not later than eight-thirty P. M. *Fourth*, one Knapp, also a disinterested witness, testified that he saw plaintiff and Durking in Slack's boat livery at about eight-thirty; that they were put out for causing a disturbance; that later, between nine-thirty and ten he was in Call's store at Lake Pleasant when Durking came in and reported the accident. If these witnesses are to be believed, then the story of the misadventure is, in substance, as follows: That the plaintiff, Durking, and another young man, who has disappeared, were in Speculator as late as eight-thirty in the evening; that they were intoxicated;

that they returned to Lake Pleasant and made a social call at the county jail where more drinks were served and had; that Durking had been a former inmate of the jail and while he was playing with the dog in the jailer's office and visiting with the jailer, the plaintiff Johnson disappeared; that upon discovering this Durking went out to look for him; that Johnson's automobile was beside the jail office; that Durking got into it and went to find the plaintiff; that he drove a considerable distance and finally over and along a dirt road which led to a private club; that while thus driving he observed Johnson lying beside the road; that he stopped the car and found he was injured. Durking says he does not know whether he hit Johnson or not.

None of the defendant's witnesses were impeached, and it is quite inconceivable to me how the equivocally told and improbable story of the plaintiff could have been accepted, wholly uncorroborated as it was, when, it seems, some corroboration would have been easy if it was true, as against the more probable version and history of plaintiff's misfortune as related by the defendant's witnesses, all of whom were either disinterested or testified against their interest. To my mind, no reasonable man, acting impartially, could conscientiously have believed plaintiff's story, opposed as it was by this other proof. It is, therefore, evident to me that for some reason the jury did not give this question sufficient impartial consideration. I cannot but believe that the fact that there had been a prior default in the original action wherein plaintiff claimed the defendant company should have defended, and the fact that the action was directly against such company, together with the admirable forensic ability displayed by plaintiff's trial counsel, that all were such as to cause the jury to fail to use requisite care in weighing the evidence in accordance with the prescribed rules.

As regards the question as to whether the action is allowable on plaintiff's proofs, I am of the opinion that it is not.

View it any way we may, the facts remain that plaintiff's policy, his contract with defendant, was one of indemnification for liability, and that he was a privy thereto for such expressly declared purpose. This contract is the basis of the present action. He sues upon it, not for indemnification, but, divorcing himself as a privy thereto, he sues upon it to be compensated for injuries caused by his licensee, who, by his, the plaintiff's, act, procured the instrument and used it and thereby caused him harm. True, the " omnibus cover " protected Durking, plaintiff's licensee, from liability to any person, but it did so only while he was operating plaintiff's automobile with the latter's consent. This protection was thus extended not

as a separate and independent agreement with Durking, and apart from the real subject-matter and paramount purpose of the policy. Indeed this extension of protection is inseparably connected with such purpose. The statutes (Vehicle and Traffic Law, § 59; Insurance Law, § 109) render this certain. The extension of protection was a detail of the protection afforded plaintifl, the named assured. It merely afforded additional protection which covered his extended statutory liability. Plaintiff, therefore, cannot assume the role of " any person " and thus divorce himself from his status as one of the two contracting parties, whose contract was made to protect him from the demands of such person. To hold otherwise would be to read into the policy another contract, one well known in the science and business of insurance, but certainly absent here, namely, one for personal accident insurance. Consideration of other features of the policy in question confirm these views. It is impossible to harmonize a contrary view with plaintiff's affirmative obligations under the contract having to do with co-operation in resistance of unjust demands, and hopeless confusion attends such a view when adherence is called to the subrogation provisions of the policy. Plaintiff's unavoidable status as privy to the contract in question presents the anomaly here of this being a suit, in effect, against himself. For he must sue upon his own policy, not that of Durking. For Durking had no contract separate and apart from his. The protection plaintiff contracted for on account of Durking's act he does not seek. Even under the omnibus coverage, that is all the contract affords him.

Motion to set aside verdict granted.