**HARDTNER et al. v. ÆTNA CASUALTY & SURETY CO. et al.**

No. 5723.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1939.

Rehearing Denied March 21, 1939.

Writ of Certiorari and Review Denied May 29, 1939.

366

Gist & Thornton, of Alexandria, for appellants.

John R. Hunter & Son, of Alexandria, St. Clair Adams & Son, of New Orleans, and Leo Gold, of Alexandria, for appellees.

DREW, Judge.

This suit was instituted by Quintin T. Hardtner, tutor of the minors, Juliette Hardtner and Henrietta Hardtner, and Mrs. Juliette Doerr Hardtner, widow of Henry E. Hardtner. The defendants were the Aetna Casualty & Surety Company, Guy A. Thompson, trustee of the Missouri Pa-

cific Railroad Company and the New Orleans, Texas & Mexico Railway, and Mrs. Fannye Lea Watson Richey, administratrix of the Succession of Stephen Leonard Richey. Subsequently a supplemental petition was filed, alleging that Mrs. Juliette Doerr Hardtner, widow of Henry E. Hardtner, died on November 15, 1936, and that her succession was opened in the Ninth Judicial District Court in the proceedings entitled "Succession of Mrs. Juliette D. Hardtner", and bearing number 2509 on the probate docket of that court. The petition seeks to substitute her heirs as parties plaintiff in this suit. The heirs were Juliette Hardtner and Henrietta Hardtner, minors, represented by Quintin T. Hardtner, tutor, and Mrs. Violet Hardtner Blake, another daughter who had reached the age of majority prior to the death of Henry E. Hardtner.

In substance, the petition alleges that Henry E. Hardtner, deceased, owned an automobile which was covered by a policy of liability insurance issued to him by the Aetna Casualty & Surety Company. On August 7, 1935, Mr. Hardtner left Alexandria in the automobile for the purpose of driving to Biloxi, Mississippi. The automobile was driven by Mr. Richey, and the two gentlemen were accompanied by Miss Henrietta Hardtner and two of her friends. On reaching a point on U. S. Highway No. 71, some few miles west of Port Allen, the automobile collided with a locomotive and train, and Hardtner and Richey were killed. It is further alleged that Hardtner had never learned to drive an automobile, and had no knowledge of the manner and means by which automobiles were operated or controlled, and was, consequently, relying entirely on the knowledge and skill of Richey. In Article Fifteen of the petition it is specifically alleged that on approaching the railroad crossing where the accident occurred, Richey was driving at a speed of some sixty miles an hour and he did not stop nor slow down before crossing the railroad crossing, all in violation of common prudence, the laws of the road, and in violation of the provisions of Act No. 12 of the Louisiana Legislature for the year 1924, which law and rules require automobiles to stop within twenty feet before approaching the main line of a railroad track. It is further said that Richey was negligent in that he was not keeping a proper lookout and was driving the automobile at an excessive speed under the circumstances.

In Article Twenty-two, the plaintiffs allege that the Aetna Casualty & Surety Company insured the liability of Richey under its policy contract to the same extent as if the policy had been issued to him direct, and in his name. In support of their theory of liability on the part of Aetna Casualty & Surety Company, the plaintiffs have copied into this article of the petition certain paragraphs and clauses of the policy said to be pertinent to the issue.

The New Orleans, Texas & Mexico Railway Company and the Missouri Pacific Railroad Company filed exceptions of misjoinder of parties defendant. The two railway companies were by agreement subsequently dismissed as parties defendant in the suit, leaving the present parties defendant Mrs. Fannye Lea Richey, administratrix, Aetna Casualty & Surety Company, and Guy A. Thompson as trustee of the New Orleans, Texas & Mexico Railway Company in bankruptcy. For sake of brevity the New Orleans, Texas & Mexico Railway Company will be referred to as "Railway Company"; Mrs. Richey as "Administratrix"; and the Aetna Casualty & Surety Company as Insurance Company.

The Insurance Company filed an exception of no cause or right of action to the original petition and subsequently filed an exception of no cause or right of action to the supplemental petition filed by the tutor and Mrs. Violet Hardtner Blake. Defendant administratrix filed an exception of no cause or right of action to the supplemental petition. The Railway Company filed an exception of no cause or right of action to both the original and supplemental petitions. The exceptions filed by the Insurance Company to both the original and supplemental petitions were sustained by the lower court and the suit dismissed as to it. The exceptions filed by the administratrix to the supplemental petition were sustained by the lower court and the demands contained in the supplemental petition were rejected. The exceptions filed by the Railway Company were not submitted nor passed upon by the lower court.

Plaintiff was granted a devolutive appeal to this court from the judgment sustaining the exceptions of no cause and right of action filed by the Insurance Company and the administratrix.

We will first discuss the exceptions filed by both appellees to the supplemental petition of plaintiffs.

Henry E. Hardtner and S. L. Richey were both killed on August 7, 1935, in an accident in which the automobile, owned by Mr. Hardtner and being driven at the time by Mr. Richey, Mr. Hardtner occupying the front seat of the car with Mr. Richey, collided with a train owned and operated by defendant Railway Company. Plaintiffs filed this suit August 5, 1936. The original plaintiffs were Mrs. Juliette Doerr Hardtner, widow of the deceased Henry E. Hardtner, and Quintin T. Hardtner, appearing in his capacity as tutor for the use and benefit of the minor children of the deceased Hardtner, viz; Juliette Hardtner and Henrietta Hardtner. They allege that their husband and father came to his death as the result of injuries caused by the negligent acts of S. L. Richey, who was driving the automobile at the time of the accident, and the defendant Railway Company whose train collided with said automobile. One of the items of damages claimed by plaintiffs is set out in the petition as follows: "That your petitioners and the Estate of the said Henry E. Hardtner paid out as funeral expenses on account of the said Henry E. Hardtner the sum of $1100.00, which amount petitioners are entitled to recover from said defendant."

On March 11, 1937, while the suit was still pending on exceptions and before answer had been filed, a supplemental petition was filed in which it is alleged that Mrs. Hardtner, one of the original plaintiffs, had died, and made parties plaintiff the tutor of the minor Juliette and Henrietta Hardtner and a major daughter of the deceased, Mrs. Violet Hardtner Blake, who was not a plaintiff in the original petition, in lieu of the original plaintiff, Mrs. Juliette Doerr Hardtner. The supplemental petition claimed for Mrs. Violet Hardtner Blake an undivided one-sixth interest in the claim for funeral expenses in connection with the death of her father, and likewise substituted Mrs. Blake and Juliette and Henrietta Hardtner, through their tutor, plaintiffs claiming to have succeeded their mother, deceased, for such claim for damages as she originally had as the result of the death of her husband and their father.

■ The exceptions were correctly sustained insofar as they related to the claim of plaintiffs that they have succeeded their deceased mother for such claim for damages as she originally had as a result of the death of her husband, for the reason that an action for the recovery of damages for death sustained is a purely personal one and does not survive the death of the beneficiary designated by law (Article 2315 of the Civil Code), and is not transmissible with the succession of the one who died, but died with her unless the claim had been reduced to judgment prior to the death of the said beneficiary. Chivers v. Roger, 50 La.Ann. 57, 23 So. 100; Kerner v. Trans-Mississippi Ry. Co., 158 La. 853, 104 So. 740; Castelluccio v. Cloverland Dairy Products Co., Inc., 165 La. 606, 115 So. 796.

■ The exceptions were incorrectly sustained as they relate to the claim of Mrs. Violet Hardtner Blake for one-sixth of the burial expenses. Her father's death clearly damaged her in that amount in that she received from his succession the amount of one-sixth of the burial expenses less than she would otherwise have received. The monetary claim of the plaintiffs' mother due for burial expenses is heritable and, in our opinion, the plaintiffs in the supplemental petition have succeeded their deceased mother for such claim for damages for funeral expenses. Pegg v. Toye Bros. Yellow Cab Co., La.App., 167 So. 896; Underwood v. Gulf Refining Co., 128 La. 968, 55 So. 641; McCubbin v. Hastings, 27 La.Ann. 713, 716–719.

We quote the following extract from the Underwood v. Gulf Refining Company case [128 La. 968, 55 So. 648]:

"The case thus referred to was decided in 1851, and, four years later, the General Assembly amended and re-enacted the article 2294 so as to provide that the right of action thereby given to a person injured should:

" 'Survive, in case of death, in favor of the minor children and widow of the deceased, or either of them, and, in default of them, in favor of the surviving father or mother, or either of them, for the space of one year from the death.' Act March 18, 1855, No. 223; Rev.St.1856, p. 79, § 18.

"But no other right of action was given to a person surviving, on account of the death of another, and it was thereafter held that a petition by a father, alleging the death of his child through the negligence of a third person, and alleging his own and the mother's mental suffering on that account, disclosed no cause of action. Earhart v. New Orleans & C. R. Co., 17 La. Ann. 243.

"In another case, where the surviving husband sued on behalf of his minor child,

as exercising the right of action inherited from its mother, and also a right of action on its own account, and where the husband likewise claimed damages for himself, it was held that the right of action first mentioned was the only one that the minor had, and that the husband had a right of action for the recovery of the 'expense and damage' which he suffered, after the infliction of the injury by reason of which his wife died—meaning, thereby, the actual expense to which he was subjected by reason of the accident. McCubbin v. Hastings, 27 La. Ann. [713], 716, 719."

We now approach the exceptions filed by the Insurance Company to the original petition. Three questions are presented under these exceptions, viz:

1. Did the named assured have the right of action against his own insurer under the "omnibus" or "additional insurance" clause of the policy?

2. Was Richey, the driver of the automobile owned by Hardtner, an agent of Hardtner and was his negligence imputed to Hardtner under the allegations of the petition?

3. Was Hardtner, under the allegations of the petition, guilty of independent negligence which would bar his recovery?

We shall discuss the questions in reverse order.

The following are the pertinent allegations of plaintiffs' petition as to the negligence of S. L. Richey:

"That the automobile in which said deceased were riding was an Oldsmobile sedan model which was owned by Henry E. Hardtner, deceased, and which was being driven and operated by the said Stephen Leonard Richey, deceased, with the knowledge, permission and consent of the said owner, Henry E. Hardtner.

"That the said Henry E. Hardtner, deceased, owner of said automobile, had never learned to drive an automobile and had no knowledge of the manner and means by which automobiles were operated or controlled, he never having driven or operated an automobile during his lifetime and he was, therefore, relying entirely on the knowledge and skill of the said Stephen Leonard Richey who had been a skillful careful operator of automobiles, and had been operating automobiles of various types and models for more than twenty years; and that the said Stephen Leonard Richey at the time of said accident was solely and exclusively in charge of said automobile and of the direction and operation thereof.

"That the said automobile and its said occupants left Alexandria at about five A. M., on August 7, 1935, with the intention of going to Biloxi, Mississippi on a pleasure trip, the said S. L. Richey being invited to go along for the reason that he was a skilled driver, a close personal friend of the said Henry E. Hardtner, and for the further reason that no other member of the party had any knowledge with reference to automobiles or the operation thereof; that the said automobile while being driven by the said Stephen Leonard Richey, on approaching the said railroad crossing where the said accident occurred, was being driven at a speed of some sixty miles an hour, and your petitioners are informed and believe, and therefore allege, the said driver thereof did not stop said automobile before attempting to cross the railroad track there located, and attempted to cross said crossing without either stopping, and apparently without retarding the said speed thereof, all in violation of common prudence, the laws of the road, and in violation of the provisions of Act # 12 of the Louisiana Legislature for the year 1924, which law and rules require automobiles to stop within twenty feet before approaching the main line of a railroad track; that said Act of said Stephen Leonard Richey in so driving the said automobile on to said crossing, constituted negligence and carelessness on his part, and was in violation of the said rules and provisions of said laws; that the said Stephen Leonard Richey was further negligent in the operation of said automobile in that he was not keeping the proper lookout and was driving said automobile at an excessive rate of speed under the circumstances."

The petition does not affirmatively allege independent negligence on the part of Mr. Hardtner and we are of the opinion it does not allege affirmatively contributory negligence on his part. The petition does not disclose whether there was any protest or warning given to Richey by Hardtner, and it was not necessary that it do so. The law does not require that a petition negative contributory negligence on the part of plaintiff. It is a special defense and must be specifically pleaded.

In support of its contention that Richey's alleged negligence was imputable to Hardt-

ner, defendant Insurance Company cites numerous cases, viz.: Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238; Link v. Shreveport Rys. Co., La.App., 153 So. 77; Duncan v. Pedare, La.App., 161 So. 221; Smith v. Sladovich & Rosengarten, 3 La.App. 527.

In each of these cases a third person was suing the owner of an automobile, who was present therein, for a tort of his agent or the owner of an automobile driven by an agent or servant was suing a third person, alleging the negligence of the third person was the proximate cause of the accident.

In that part of the case at bar which is before us, the plaintiffs are suing the driver of the car in which Hardtner was riding at the time of the accident. The Insurance Company is in no way concerned as to the liability of the Railway Company. Their only concern is in regard to the liability of Richey. The case is the same as if neither Richey nor Hardtner had died, and Hardtner was suing Richey and the Insurance Company as his insurer.

The only way or theory upon which negligence of one person may be imputed to another is under that of agency; and even where the relationship of master and servant, or principal and agent exists, the principal or master has a cause and right of action against the agent or servant for the damage the principal or master has suffered by the wrongful acts of his agent or servant.

In the case of Costa v. Yochim, 104 La. 170, 28 So. 992, 993, the court said: "While the master is liable to third persons for injury arising from his servant's negligence within the scope of his employment, if the master is free from fault as to negligence in question he may have his remedy against his servant for damages to which he is thereby subjected, and the measure of damages, in such case, is the amount of the recovery against the master."

If we should consider Richey to have been an agent of Hardtner, to hold that the negligence of the agent which has injured the principal is imputed to the principal, would be equivalent to holding that under no circumstances could the principal ever be reimbursed for his loss or damage caused by the wrongful act of his agent. That is not the law. In the case of Burmaster v. Texas Pacific-Missouri Pacific, Terminal R. Co. of New Orleans, La.App., 174 So. 135, 139, and the case therein cited of Gibbs v. Illinois Cent. Ry. Co., 169 La. 450, 125 So. 445, the court said: "We understand that doctrine to mean that an exception of no cause of action can never be meritoriously pleaded to a petition sounding in damages for personal injury or death on the ground of contributory negligence of the plaintiff, unless its charges are such as to exclude every other reasonable hypothesis other than the sole and proximate cause of the accident was due to the contributing fault of the plaintiff."

The allegations of the petition in this case do not exclude every other reasonable hypothesis than, the or a proximate cause of the accident was due to the contributory fault of plaintiff.

We therefore conclude that Richey's negligence was not imputable to Hardtner under the affirmative allegations of the petition; neither do the allegations of the petition disclose affirmatively that Hardtner was guilty of independent negligence that was, a proximate cause of the accident and his death.

The first question, and the remaining one to be discussed, is the most serious one. It involves a point of law which is res novo in Louisiana jurisprudence, and, so far as we have learned, there are only a few cases in the entire United States in which the question has been discussed and decided.

Appleman's Automobile Liability Insurance, published in 1938, under the title, "Bodily Injury or Death of Named Insured", on page 135, has the following to say:

"An attorney unfamiliar with automobile insurance law might be inclined to feel this clause to be pure surplusage. It is conceded that the intention of an automobile policy is to protect the named insured and persons operating with his permission from legal liability, and is not intended to compensate the insured for his own injuries. It is a liability rather than a personal injury policy. In the absence of such a clause, however, the courts have had a sharp conflict of authority and the majority have permitted the named insured to recover for his own injuries. Of course the situation can only arise where a person other than the insured is operating the vehicle. The reason for the majority rule is not without logic. It is somewhat as follows: The insurer intends to protect

any person operating with the insured's consent in every case. That operator may have an accident in which he becomes legally liable to the insured for his negligence in operation. If the insurer denies a recovery, then it is not affording complete protection to the additional insured. Since it purports to render complete protection by the omnibus clause the rule of strict construction against the company must be applied. By applying this rule favorably to the additional insured the accident is covered and the named insured permitted to recover.

"The minority rule looks to the intention of the policy rather than the exact wording, although the result is justified by the policy language to a large degree. The courts have attempted to distinguish the majority and minority cases on the basis of the policy language but in no case discussed is there any exclusion clause present such as is found in the standard policy. The result is clearly arrived at because of the difference in the courts' attitude. The minority courts construe the intention of the company and the insured to protect the insured against liability primarily, and extends the coverage over to his friends as a matter of courtesy. This action is held to be ineffective to convert the policy from one of liability to one of personal injury.

"Assume that the operator of the automobile, however, brings suit against the owner for injuries sustained if an accident happens solely because of defective equipment. Or assume that the omnibus clause protects persons 'riding in' or 'legally responsible' and such a person brings suit against the driver, usually his own agent, for his negligent operation. May the insurer defend upon the ground that such plaintiff is a person insured against legal liability and claim immunity on that basis? Upon this point the standard policy does not change the existing law as the exclusion pertains only to the 'named' insured. Clearly, the decisions of the majority would permit a recovery. Several other decisions involving this identical point have permitted such an action to lie."

The following pertinent clause in the policy of insurance issued to Mr. Hardtner by the Insurance Company, and the principal clauses necessary to consider in determining the question before us, are as follows:

"In consideration of the Declarations in the application, copy of which is attached and made a part hereof, and of the premium provided in said application The Aetna Casualty and Surety Company, hereinafter called the Company, does hereby insure

"The Assured named herein, subject to the terms and conditions herein and endorsed hereon, while the automobile described is within the United States (exclusive of Alaska, the Hawaiian, Philippine and Virgin Islands and Porto Rico) and Canada, against the following risks.

"Clause Five—Liability on Account of Bodily Injury.

"Loss And/Or Expense Resulting From Claims for damages upon the Assured on account of bodily injuries and/or death accidentally suffered or alleged to have been suffered by any claimant or other person (except employees of the Assured while engaged in operating or caring for an automobile in the course of employment of the Assured, or injured in the course of employment in the business of the Assured or entitled to benefits under any Workmen's Compensation law) by reason of ownership or operation of the described automobile, provided the Company's liability for loss on account of an accident resulting in bodily injuries and/or death to one person regardless of the number of claimants is limited to the sum stated in Clause Five of Paragraph A of said application and, subject to the same limit for each person, the total liability for loss on account of any one accident is limited to the sum stated in Clause Five of said Paragraph A.

"VI. Additional Interest. While any automobile covered hereby is being used with the consent of the Assured or an adult member of the Assured's household, who is not a chauffeur or domestic servant, the provisions of this policy with respect to claims on account of damage to property of others or bodily injuries and/or death of others shall inure to the benefit of any person operating or riding in, and to any person, firm or corporation responsible for the operation of said automobile; provided, that no person other than the Assured shall be entitled to recover hereunder if there be any other insurance which would cover the loss of such other person if this insurance had not been effected, but this policy shall not cover the liability of any proprietor, owner, agent or employee of

any garage, repair shop, service station, parking station or sales agency while engaged in the duties of or incident to his business, and further, no person to whom an automobile covered hereby has been sold, transferred or assigned by the Assured shall be entitled to recover hereunder unless the written consent of the Company to such sale, transfer or assignment is endorsed herein. This additional interest clause shall not apply to automobiles used, rented or leased for carrying passengers for hire or automobiles kept for that purpose except those owned by a funeral.director and used for the transportation of persons at funerals."

Clause Five provides for the reimbursement of the named assured of loss or expense from claims upon him on account of bodily injury and/or death accidentally suffered or alleged to have been suffered by any claimant or other person except those specifically excluded from the benefits of the policy. Clause Six provides that the policy shall apply to and cover and keep safe from loss on account of bodily injury or death to others in an accident in which the automobile is involved any person using the named assured's automobile with his consent, subject to certain exclusions set out in the clause.

The majority rule spoken of by Appleman in his work on automobile liability insurance, is as found in the cases of Farmer v. U. S. Fidelity & Guaranty Co., D.C., 11 F.Supp. 542, 543, wherein the court said: "J. T. Clark was the servant and chauffeur of the owner and named assured, was legally using the automobile with the express permission of the owner, and is within the provisions of the contract as an assured party. Bachman v. Independence Indemnity Company, 214 Cal. 529, 6 P.2d 943. The one and only way to exclude Clark as an assured would be to hold that he was not using the automobile. Such holding would not be, in the opinion of this court, founded on reason, and would be contrary to the rule of law that insurance contracts should be liberally construed in favor of the assured."

And in the case of Howe v. Howe, 87 N.H. 338, 179 A. 362, 364, a New Hampshire case, the court said: "The principal ground of defense is based upon the ruling of the court that, as a matter of law, 'It was not within the contemplation of the parties when this policy was written that the benefits under the policy would be avail-able to the named assured in the event that she were injured through the negligence of another named assured, and that such was not the intent of the Legislature in its enactment of Chapter 54, Laws of 1927.' This ruling of law as to the contemplation of the parties and the intent of the Legislature is erroneous. What their contemplation or intention was is to be determined by reference to the words which they used, and those words are clear and unequivocal. The defendant, in accordance with Laws 1927, c. 54, agreed to indemnify the plaintiff's husband, Henry J. Howe, an assured, by virtue of the 'omnibus clause', against loss by reason of the liability imposed by law upon him for damages on account of 'Bodily injuries and or death to any person or persons.' * * * The plaintiff, although a named assured, is a person within the meaning of the general words of coverage quoted above, and we believe that it was the intention of the Legislature and of the contracting parties to include her with the coverage, because, had it been intended to exclude coverage for bodily injuries to a named assured, appropriate words of exclusion could readily have been used. In fact, this is precisely what was done both in the statute and in that clause of the policy which gave coverage for property damage. The statute requires coverage only 'for damage to the property of others,' and the policy expressly excludes the property of the assured. In the light of this express language it seems inconceivable that a like limitation in respect to bodily injuries, had it been intended, would not have been similarly expressed."

In the case of Archer v. General Casualty Company of Wisconsin, 219 Wis. 100, 261 N.W. 9, 262 N.W. 257, the plaintiff and her husband owned the automobile jointly, and had the policy issued in both names. The policy insured each of the assureds against "loss or expense arising out of liability to any person or persons." The court stated that plaintiff was a third party beneficiary despite the fact that she was a.named assured.

In Bachman v. Independence· Indemnity Company, 214 Cal. 529, 6 P.2d 943, the court said: "The question presented to us is whether the language of the policy covers the liability sought to be enforced here. The terms of the policy are very broad, and perhaps somewhat unusual. It insures any person operating the automobile with the

permission of the insured. Bayliss, the driver, was unquestionably operating the machine, and the court so found, even though it also found that Mrs. Bachman was 'in control' of the automobile. The policy insures for loss arising out of liability of the person operating the automobile to any person or persons. Are the children of Mrs. Bachman included within the meaning of this provision? This depends upon whether Bayliss is liable to them, and it is difficult to discover any reason why he is not. His negligence caused the death of their mother, and the wrongful death statute (Cal.Code Civ.Proc. § 377) gives them a right of action against the person thus responsible."

Union Automobile Ins. Co. v. Samelsen, 71 Colo. 479, 207 P. 1113, holds to the same rule as the above cited cases.

The cases setting out the minority rule, and which are relied upon by defendant Insurance Company, are:

Johnson v. Employers' Liability Assurance Corporation, 158 Misc. 758, 285 N.Y. S. 574, 580. In this case the "omnibus cover" protected the operator of the automobile from liability to "any person", the same provision interpreted in the cases heretofore quoted from. The Johnson case held as follows: "View it any way we may, the facts remain that plaintiff's policy, his contract with defendant, was one of indemnification for liability, and that he was a privy thereto for such expressly declared purpose. This contract is the basis of the present action. He sues upon it, not for indemnification, but, divorcing himself as a privy thereto, he sues upon it to be compensated for injuries caused by his licensee, who, by his, the plaintiff's, act, procured the instrument and used it and thereby caused him harm. True, the 'omnibus cover' protected Durking, plaintiff's licensee, from liability to any person, but it did so only while he was operating plaintiff's automobile with the latter's consent. This protection was thus extended not as a separate and independent agreement with Durking, and apart from the real subject-matter and paramount purpose of the policy. Indeed this extension of protection is inseparably connected with such purpose. The statutes (Vehicle and Traffic Law, § 59; Insurance Law, § 109) render this certain. The extension of protection was a detail of the protection afforded plaintiff the named assured. It merely afforded additional protection which covered his extended statutory liability. Plaintiff therefore cannot assume the role of 'any person' and thus divorce himself from his status as one of the two contracting parties, whose contract was made to protect him from the demands of such person. To hold otherwise would be to read into the policy another contract, one well known in the science and business of insurance, but certainly absent here, namely, one for personal accident insurance. Consideration of other features of the policy in question confirm these views. It is impossible to harmonize a contrary view with plaintiff's affirmative obligations under the contract having to do with co-operation in resistance of unjust demands, and hopeless confusion attends such a view when adherence is called to the subrogation provisions of the policy. Plaintiff's unavoidable status as privy to the contract in question presents the anomaly here of this being a suit, in effect, against himself. For he must sue upon his own policy, not that of Durking. For Durking had no contract separate and apart from his. The protection plaintiff contracted for on account of Durking's act he does not seek. Even under the omnibus coverage, that is all the contract affords him."

The holding of the court in the Johnson case is in direct conflict with the ruling in the five cases cited to support the majority rule. In that case, when the court said that extension of protection to Durking was a detail of the protection afforded plaintiff, the named assured, and that it merely afforded plaintiff additional protection which covered his statutory liability, we feel justified in assuming that the statutes of New York made the owner of an automobile responsible in damages even though it is being operated by a third person. If that be true, the reasoning in the Johnson case might be justified, but in this state we have no such statute. The "omnibus" or "additional insurance clause" does not merely afford additional protection to the owner of the car but clearly, under its express terms, extends the insurance to cover any other person who might be operating the car with the owner's consent.

In the case of MacBey v. Hartford Accident & Indemnity Co., 292 Mass. 105, 197 N.E. 516, 517, the court construed a compulsory motor vehicle liability insurance

374

policy. The relevant portion of the statute required that the policy provide, "* * * indemnity for or protection to the insured and any person responsible for the operation of the insured's motor vehicle with his express or implied consent against loss by reason of the liability to pay damages to others for bodily injuries." G.L.Mass.(Ter.Ed.) c. 90, § 34A. The plaintiff was the named assured and obtained judgment against one Smith, who was operating the automobile with plaintiff's consent when she was injured by Smith's negligence. After securing a judgment against Smith, she entered this suit to recover from her liability insurer under the omnibus clause. Her demands were rejected, and in the course of the opinion the court said:

"In the present statute, the word 'others' describing persons to whom damages are to be paid, following the words 'insured' and 'any person' joined as describing those to be protected by the policy, plainly shows that inclusion of the named assured within the class of beneficiaries was not within the legislative intent. As matter of construction, the beneficiaries under the policy are denominated 'others' as contrasted with 'the insured' and 'any person responsible for the operation of the insured's motor vehicle' who may cause the damage. The language of the statute is free from ambiguity.

\* \* \* \* \* \*

"These provisions respecting a bond or a deposit indicate clearly that the obligation of giving assurance of compensation for injuries due to the operation of a motor vehicle is imposed on the owner for the benefit of 'others' and not for his own benefit. * * * The case at bar is clearly distinguishable from Bachman v. Independence Indemnity Co., 214 Cal. 529, 6 P.2d 943, in the crucial words involved. \* \* \* \*"

Following this statement the court said, "The rule applied in that case [Bachman v. Independence Indemnity Co., supra] to the effect that ambiguities in a policy of insurance must be resolved against the insurer is inapplicable to provisions prescribed by statute."

This decision was clearly one interpreting a statute of the State of Massachusetts, and is hardly authority applicable to the case at bar.

The other case relied upon by defendant is a Connecticut case styled Cain v. American Policyholders' Ins. Co., 120 Conn. 645, 183 A. 403, 405. The policy provision in that case is the same as in the case at bar. We will quote fully from it as follows:

"The so-called 'Insuring Clause' of the policy issued by the defendant to the plaintiff provides that the insurer, in consideration of the premium, 'agrees to indemnify' the named insured (the plaintiff) 'and any person responsible for the operation of the named insured's motor vehicle or trailer described herein with his express or implied consent against loss by reason of the liability to pay damages to others for bodily injuries.' * * *

"These provisions therein clearly were intended to, and do literally, conform to the requirement of the Massachusetts Compulsory Motor Vehicle Liability Insurance Law * * *. This statutory provision has been construed by the Supreme Judicial Court of Massachusetts, since the instant case was decided in the superior court, in MacBey v. Hartford Accident & Indemnity Co., [292 Mass. 105], 197 N.E. 516, 517. * * *

"Although in that case it was the statute which was being directly construed instead of the conforming policy provision itself, and notwithstanding differences in the applicable rules of construction, this decision is manifestly at least very persuasive of the meaning to be accorded to the insuring clause of the policy now under consideration. * * * In Boudreau v. Maryland Casualty Co., 287 Mass. 423, at page 426, 192 N.E. 38, 39 * * * it was said that the insured's liability under a policy issued pursuant to the Compulsory Motor Vehicle Law, is 'to indemnify a person other than the owner for the consequences of negligent operation.' * * *

"Additional considerations point in the same direction. As in the construction of a statute the intention of the Legislature is sought, so in the construction of an insurance policy ascertainment of the true intent of the parties is the paramount object. * * * Various provisions of the policy appear to be inconsistent with a status of the insured as a beneficiary as a claimant for damages for injuries, including agreement I by which the insurer agrees to pay certain expenses incurred by the insured such as for immediate medical or surgical relief, premiums on attachment

and appeal bonds, and costs taxed against him, and II, under which the company agrees to defend or settle 'in the name and on behalf of the insured any claims, suits, or other legal proceedings alleging such injuries and demanding damages on account thereof'; condition C, requiring cooperation of the insured in defending suits, and D, providing for subrogation of the company to payments made under the policy; also the provisions in the extraterritorial indorsement, above quoted, concerning order of application of insurance payable. \* \* \*

"The effect which the plaintiff seeks to give to this policy is foreign to the object and common conception of the scope of public liability insurance, which, as concerns the assured, is third party coverage, that is, insurance against the liability of the assured for injury which has been sustained by a third person by negligence in the operation of the automobile. Simpson, Automobile Insurance (2d Ed.), p. 297; Richards, Insurance (4th Ed.), p. 885. There is a significant paucity of cases in which the named assured has claimed a right of recourse to such insurance for damages for injuries to himself, although the policy agreed to indemnify against loss through liability for damages on account of injuries 'to any person or persons' as distinguished from such damages 'to others' as in the present instance. The Mac-Bey Case, supra, is the only one involving the latter phraseology which has come to our notice. Recovery by an assured in the few cases in which it has been allowed is clearly attributable to the broader coverage construed to be afforded by the policy provision above mentioned. Howe v. Howe [87 N.H. 338], 179 A. 362; Archer v. General Casualty Co., [219 Wis. 100], 261 N. W. 9, [262 N.W. 257]; Union Automobile Ins. Co. v. Samelson, 71 Colo. 479, 207 P. 1113; Farmer v. United States Fidelity & Guaranty Co., D.C., 11 F.Supp. 542. In Bachman v. Independence Indemnity Co., 214 Cal. 529, 6 P.2d 943, 'the theoretical rights' of the insured were not involved.

"To accord to this policy the effect which the plaintiff claims would be to virtually insert into it another contract, distinct from public liability coverage within the scope of the policy and amounting to personal accident insurance against bodily injuries suffered by the assured. There is nothing to indicate any intention of either party to combine, in this policy, these two kinds of coverage. A public liability policy is not a policy of accident insurance indemnifying the assured against injuries suffered by himself in an accident. By its definite terms it insures against claims for damages for which he or others named in the policy might become liable. \* \* \*"

In that case the court attempted to differentiate it from the cases we cited conforming to the majority rule on the ground that the coverage in the majority rule cases was broader than in the case before it. We do not agree with the finding of the court in that case, and agree with Appleman when he said: "The courts have attempted to distinguish the majority and minority cases on the basis of the policy language but in no case discussed is there any exclusion clause present such as is found in the standard policy. The result is clearly arrived at because of the difference in the courts' attitude."

The policy of insurance sued on in this case does not include any exclusion clause which excludes the named assured as the beneficiary under the policy except when he is operating the car, unless we should construe the word "other" strictly and to mean some person other than the named assured. The language of the policy does not justify such a construction.

We agree that the intention of the contracting parties to the policy should govern when the language of the policy clearly discloses it. We so held in the case of Chandler v. Aetna Insurance Company, 188 So. 506, decided by us this day; but to our minds it would take a strained construction to place upon the policy before us the meaning which defendant contends for. To say the least, the meaning of the word "other" as used in the "omnibus clause" is ambiguous and subject to more than one construction. The reasonable construction, we think, is that it means other persons than the operator of the car who is driving with the consent of the owner, the named assured.

That the administratrix of Richey's succession is liable to the minor children of Hardtner under the allegations of the petition is not questioned. Neither is it questioned that Richey was fully protected from any liability on account of accident causing bodily harm or death to others.

376

The policy would utterly fail to protect Richey or his administratrix, which it was intended to do, if we should hold that it did not protect him against damage caused to Hardtner's minor children. To so hold we would have to find that the word "other" meant other than the named assured. If that was the intention of the Insurance Company it could have easily included such an exclusion in its exclusion clause, as is said by Appleman to appear in the standard policies of today.

Under the express provisions of the contract, the Insurance Company is not interested in nor concerned with the matter as to who shall receive the award of damages resulting from an injury occasioned by the operation of the automobile covered by the contract of insurance. The sole purpose of the contract is to indemnify all persons who fall within its provisions and are not specifically excepted therein. One who is operating the automobile with the consent of the owner and named assured in the policy, as was Richey, is covered by the policy and it does not except from its benefit the named assured under the circumstances of this case. The named assured, so far as Richey was concerned, was an "other person" under the policy.

We therefore conclude that the majority rule laid down in the cases cited is the correct rule, and that the exceptions of no cause of action and no right of action filed by defendant Insurance Company to the original petition were erroneously sustained.

It therefore follows that the judgment of the lower court sustaining the exceptions of no cause and no right of action filed by the Insurance Company to the original petition is reversed and the exceptions are now overruled; that the exceptions of no cause or right of action filed by the Insurance Company and the administratrix to the supplemental petition are sustained insofar as the right is claimed to succeed their deceased mother for such claim for damages as she originally had as the result of the death of her husband, Henry E. Hardtner, with the exception of the claim for funeral expenses in which respect the exceptions are overruled as to all supplemented plaintiffs; and the case is now remanded to the lower court to be tried in accordance with law.