ODOM, Justice.
 

 The judges of the Court of Appeal, Second Circuit, availing themselves of the right conferred by Section 25, Article VII of the Constitution, have certified to this court a question of law arising in the above styled and numbered case, pending on appeal before that court, and for their proper decision of that question they desire the instructions of this court.
 

 Section 25, Article VII of the Constitution, provides that, when a question of law is certified to this court by a Court of Appeal, this court may give its instructions on the question of law certified to it, or it may require that the whole record be sent up for its consideration and thereupon shall decide the whole matter in controversy in the same manner as if it had been on appeal directly to the Supreme Court. In this case the Court of Appeal has transmitted to this court the entire record in the case, together with briefs of both plaintiff and defendant, and counsel for defendant insurance company have asked us to consider the entire record and decide all points involved in the same manner as if it had been an appeal directly to this court. In Phillips v. New Amsterdam Casualty Co. et al., 193 La. 314, 190 So. 565, we ordered the Court of Appeal to send up the entire record for our consideration. In that case it was thought necessary to consider the entire record in order to enable the court to give instructions concerning the particular question certified by the Court of Appeal. But we find no occasion for following that procedure in the present case, because the question of law certified to us can be determined on the statement of facts made by the Court of Appeal, without reference to, and independently of, any of the other questions of law or fact involved in the case.
 

 The facts of the case which give rise to the question of law involved are stated by the Court of Appeal to be these:
 

 
 *73
 
 “Plaintiff is the husband of Mrs. Bessie D. McHenry, between whom the community of acquets and gains exists. Mrs. McHenry, on the date of the accident involved herein, was in the employ of the Welcome Wagon Service Company, and had been so employed for several years. When the accident occurred there was in force an automobile liability insurance policy issued by defendant, American Employers’ Insurance Company, wherein Mrs. McHenry and the Welcome Wagon Service Company were named as ‘the insured.’ The automobile involved in the accident is specifically covered by said policy. The policy contains the following obligation assumed by the insurer, to-wit:
 

 “ ‘To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile.’
 

 “In the morning of June 28, 1941, Mrs. McHenry, while backing the insured automobile from the premises of herself and husband, lost control thereof and it struck plaintiff, the husband, inflicting serious and painful injuries to him. He instituted this suit against said insurer (reserving his right to sue the Welcome Wagon Service Company) to recover damages sustained by him, alleging that the accident was caused solely by the negligence, in several respects of Mrs. McHenry. This court has found these facts to be established by the record, to-wit:
 

 “That the accident happened solely from the carelessness and actionable negligence of Mrs. McHenry; that at the time of the accident she was acting within the scope of her employment and had begun a mission in the interest of her said employer.
 

 “Defendant, the insurer, resists the suit on several grounds, but mainly, however, on the ground that as the community of acquets and gains between Mr. and Mrs. McHenry was in effect when the accident occurred, and any judgment the husband should procure herein would become a community asset in which the wife would have a vested interest and ownership to the extent of one-half, she would therefrom profit from her own tortious act. It is argued that to permit recovery by plaintiff, in view of the facts and circumstances, would obviously be in violation of sound public policy and good morals.
 

 “Question
 

 “In view of the related facts and findings, is the plaintiff entitled to recover from the insurer the damages, in whole or part, for which he sues ?”
 

 In their brief filed in this court, counsel for the defendant insurance company say: “The sole question presented to this Court is, therefore, whether it would be contrary to public policy, or contra bonos mores, to permit Mrs. McHénry
 
 to profit from a cause of action which she herself brought about by her own negligence.”
 

 
 *75
 
 Under Article 2402 of the Revised Civil Code, as amended and reenacted by Act 68 of 1902. “ * * * damages resulting from personal injuries to the wife shall not form a part of this community, but shall always be and remain the separate property of the wife recoverable by herself alone.”
 

 Thus, where the wife recovers damages resulting- from personal injuries sustained by her, the amount so recovered does not fall into the community and become a community asset, and the husband therefore has no personal interest in what she recovers. On the other hand, if the husband recovers damages resulting from personal injuries suffered by him, the amount so recovered falls into the community and becomes a community asset in which the wife has an interest by virtue of the community relationship which exists between her and her husband. This gives rise to the contention made by counsel for the insurance company that it would be contrary to public policy or contra bonos mores to permit a wife to profit from a cause of action which she herself brought about by her own negligence.
 

 This defense seems to be grounded upon the theory that in this case, if Mr. McHenry, Mrs. McHenry’s husband, is permitted to recover damages for the injuries sustained by him, Mrs. McHenry will profit to the extent of one-half of whatever amount he may recover. Theoretically, this sounds plausible. It clearly appears, however, that, if plaintiff collects the amount awarded him by Judge Voelker, the trial judge, the community will not be enriched but will only be reimbursed for the loss it has sustained as a result of the accident. We find in the record the trial judge’s written opinion, in which he states the facts of the case as he found them to be, as well as his conclusions. He sets forth specifically the items of damage for which he allowed plaintiff to recover.
 

 We quote the following from his opinion :
 

 “The car struck plaintiff, knocking him into Bres Avenue on his face. As a result of said accident, he suffered severe pains and injuries, which principally consisted of an irregular fracture through the base of the neck of the right femur with complete severance and upward misplacement of the lessor trochantor; a cut on the forehead, with a long gash over the right eyebrow, cuts and general bruises, contusions and lacerations. As a result of these injuries, he was confined in the St. Francis Sanitarium for about three weeks, and had to remain in bed at home for about six weeks.
 

 “Due to these injuries to his right hip, it was necessary that two operations be performed, the last for the removal of a Smith Petterson Nail. Plaintiff testified that he suffered considerable pain, and was still suffering pain at the time of the trial of this case. It also was testified by medical experts that his right leg was shortened about 7/8 to one inch, as a result of said injury, and that he was unable to walk without assistance of a cane. Competent medical testimony established that he suffered a 75% disability.. He, at the time of the accident, was 69 years of age.”
 

 
 *77
 
 Referring now to the testimony, we find that it shows that at the time of the trial of the case, which took place in September, 1942, about a year and three months after the accident occurred, Mr. McHenry could walk only with the assistance of a cane and then only for a few blocks at a time; that he was still suffering severe pain; that his leg was so stiff and sore that he could not put on his own shoes and that his wife had to put them on for him; that, after he returned home from the sanitarium and for a period of some seven or eight months thereafter, he could walk only with the assistance of crutches, and that at the time of the trial he could not rest the weight of his body on his injured leg. In other words, at the time of the trial he was still very much disabled, although he was doing some work as pharmacist at the Conway Memorial Hospital.
 

 The trial judge rendered judgment in favor of plaintiff in the total sum of $7482.24, made up of the following items:
 

 1. Doctor’s bills $ 600.00
 

 2. Ambulance service 12.50
 

 3. Hospitalization charges 209.70
 

 4. Destruction of eyeglasses 12.50
 

 5. X-ray pictures 22.50
 

 6. Trained nurses 540.00
 

 7. Practical nurses or attendants 220.35
 

 8. Medicines 49.94
 

 9. Massage by Russell 18.00
 

 10. Incidentals at St. ■ Francis Sanitarium 6.75
 

 11. Loss of salary 990.00
 

 12. Mental and physical shock 500.00
 

 13. 75% permanent disability. $3500.00
 

 14. Pain and suffering 800.00
 

 Total ' $7482.24
 

 In discussing the question whether the community existing between Mr. and Mrs. McHenry will be enriched as a result of this judgment, and incidentally whether Mrs. McHenry, the wife, will “profit” therefrom, the judge says:
 

 “The first ten items of damage concern specific expenses incurred as the result of the accident, such as doctors’ bills, ambulance service, hospital charges, nurses, and X-ray, medicines, etc., also destruction of eye glasses. These are expenses, therefore no profit to the community.
 

 “Item eleven covers loss of salary in the sum of $990.00. If Mr. McHenry had not become incapacitated, he would certainly have earned this amount, at the rate of $110.00 per month for nine months. This sum would not be in [an] addition to the assets of the community, but a replacement of funds lost because of the accident. There is no profit here.
 

 “Items twelve, thirteen and fourteen involve the capacity of plaintiff to continue useful employment. A 75% permanent disability reduces his earning power by 3/4. Mental and physical shock and pain and suffering also bear directly on his ability to make a living for his family. Therefore, items one to eleven inclusive, relate specifically to measurable expenses, while items twelve, thirteen and fourteen relate to intangibles bearing directly on earning capacity.”
 

 
 *79
 
 We concur in the view expressed by the trial
 
 judge
 
 that, if the plaintiff collects the amount of this judgment, Mrs. McHenry will not profit or be enriched. The judgment is in favor of Mr. McHenry and compensates or reimburses him for the damage which he has suffered on account of the accident and for the expenses incident thereto which the community must pay. The loss which he has sustained is a loss to the community. What he has lost the community has lost. Clearly, the effect of the payment of this judgment will be to repair a damage which the community has sustained. Such is the opinion of the trial judge, in which opinion we concur.
 

 The defense relied upon, in so far as it relates to the only issue presented to us, is grounded upon the assumption that, since Mrs. McHenry was living in community with her husband at the time the accident occurred and will for that reason have a vested • interest and ownership, to the extent of one-half, in whatever amount her husband may recover, she would profit o,r reap some material benefit from the cause of action which she herself brought about by her own negligence. That defense cannot be sustained in this case, because it is .not true, as assumed by defendant, that Mrs. McHenry will’ “profit” or reap some material benefit from plaintiff’s cause of action against the insurance company. Counsel for the insurance company cite Article 19 of the Code of Practice, which provides that:
 

 “Obligations contrary to justice, good faith, or good morals, such as those by which a reward is promised to another to commit a crime, give no right of action to either party to enforce the execution of the contract.”
 

 This article relates to contracts entered into for immoral or corrupt purposes, and declares that the parties to such contracts have no right of action to enforce the execution of them.
 

 Counsel cite also Article 1895 of the Revised Civil Code, which appears in the Code under the heading “Of the Cause or Consideration of Contracts.” The first article which appears under that general heading is Article 1893, which provides that “An obligation without a cause, or with a false or unlawful cause, can have no effect.” And Article 1895, which is cited by counsel, says that “The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order.”
 

 According to Article 1896 of the Code, what is meant by the word “cause” of the contract, as that term is used in this section, is “the consideration or motive for making it.”
 

 After citing Article 19 of the Code of Practice and Article 1895 of the Civil Code, counsel say in their brief that many examples could be cited to illustrate the general principles laid down in these articles of the Codes. For instance, say counsel, on the grounds of public policy one who deliberately burns an insured building would not be permitted to collect the insurance. That is true, for the manifest reason that, if the insured deliberately
 
 *81
 
 burned his building for the purpose of collecting the insurance, the motive for committing the incendiary act would be immoral and corrupt. Recovery in a case of that kind would unquestionably be barred by the public policy rules laid down in the Codes. But there is no analogy between a case of that kind and a case like the one presently under consideration. Mrs. McHenry was not guilty of any immoral or corrupt act. She was negligent in her operation of the automobile, and by the word “negligent” we mean that she did not exercise that degree of care which an ordinarily prudent person would have exercised under the same circumstances.
 

 Counsel for the insurance company cite the case of Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579, 581, 59 A.L.R. 148. In that case a husband and wife were riding in a truck operated by the husband. The truck collided with a cab belonging to the defendant, and as a result of the collision the husband was killed and the wife suffered severe injuries. The wife sued the cab company to recover damages for her own injury and suffering, and also to recover for the pain and suffering of her husband, to which right of action she succeeded. The court found as a fact that both the driver of the truck and the driver of the cab were guilty of negligence, and that the concurrent negligence of the two continued down to the collision. In our opinion we said:
 

 “The legal question presented, and the one upon which the case was called up for review, is whether or not the concurring negligence of the husband is imputable to the wife, and is a bar to her recovery for her own physical injuries and for the loss occasioned by the death of her husband.”
 

 The court held that: “In view of Act No. 68 of 1902, making damages for personal injuries to wife her separate property, and recoverable by wife alone without joining husband, contributory negligence of husband may not be imputed to wife, in action for personal injuries re-' ceived by wife due to such contributory negligence.” (Paragraph 3, Syllabus.)
 

 The court reviewed the jurisprudence of other states and said that it was settled that the negligence of a driver of a vehicle is not imputable to a guest of such driver, and that the great weight of authority in other jurisdictions was to the effect that the wife, when travelling in a vehicle driven by, and under the control of, her husband, “is in no different position from that which she would occupy if the driver of the vehicle had been a person other than the husband.”
 

 After citing numerous cases from other jurisdictions in support of its conclusion that the negligence of the husband was not imputable to the wife, the court said:
 

 “The only exception we have been able to find is in those states where the wife cannot sue in her own name, and is not entitled to receive the money recovered for her personal injuries.
 

 “The reason for denying recovery in those states is that- the husband cannot be permitted to create the cause of action by his negligent conduct, and then reap the benefit which his interest in the action confers.”
 

 
 *83
 
 Counsel say that the converse of this is true, which is that the wife cannot be permitted to create the cause of action by her negligent conduct and then reap the benefit which her interest in the action confers.
 

 It has been held in many cases decided by courts of other jurisdictions that, where damages recovered for personal injuries suffered by a married woman constitute a community asset which the husband shares and over which he has control, the contributory negligence of the husband will defeat an action by either spouse for injury to the wife resulting from negligence of a third person. In other words, it was held that, in all cases where a wife is injured by the joint negligence of her husband and of a third party, the husband’s negligence should be imputed to the wife by reason of their marital relationship, and should bar recovery. The reason for the ruling in such cases seems to have been that, since damages recovered for injury to the wife fall into the community in which the husband is interested, and since the husband is a necessary party to the action to recover the damages, it followed that the husband could not be permitted to recover when his negligent conduct contributed to the creation of the cause of action.
 

 We need not cite these cases here, for many of them are cited in a case note found in 110 A.L.R. at page 1103. These cases and others like them are cited and relied upon by counsel for the defendant. But in these cases it seems to have been assumed that, when a husband and wife are living together under the community regime, the community — and, incidentally, the husband — would profit in a material way by the recovery of damages for injuries to the wife. This is a reasonable assumption, for ordinarily the husband is the wage-earner and the wife contributes but little in a financial way to the support of the community. The question whether or not the community would be benefited by the recovery of damages for injury to the wife was not raised or discussed in those cases.
 

 In the case at bar, that question was raised, and it definitely appears that the community existing between Mr. and Mrs. McHenry will not profit by the recovery of the damages claimed by Mr. McHenry for the injuries which he has sustained.
 

 Our answer to the question of law certified to us is that, in view of the facts, conditions, and circumstances disclosed by the record in this case, the mere fact that plaintiff and his wife were living together in community at the time the accident occurred does not debar the plaintiff from recovering damages from the insurance company for the injuries he received.
 

 O’NIELL, C. J., dissents.