68 So.2d 189 (1953)
McDOWELL
v.
NATIONAL SUR. CORP. et al.
No. 3695.
Court of Appeal of Louisiana, First Circuit.
October 6, 1953.
Rehearing Denied December 8, 1953.
Writ of Certiorari Denied February 15, 1954.
*190 Huckabay, Seale, Kelton & Hayes, Baton Rouge, for appellants.
F. Louis Gonzales, Baton Rouge, for appellee.
LOTTINGER, Judge.
This is a suit for damages by Louis Wilburn McDowell against National Surety Corporation and the National Surety Marine Insurance Corporation. The claim is for the total sum of $24,690 for personal injuries suffered by petitioner resulting from an automobile accident. The lower court rendered judgment in petitioner's favor in the sum of $17,924.50. Defendant has taken this appeal.
The facts, as found by the lower court, and which are not seriously disputed, are as follows. The defendant company issued to petitioner a liability insurance policy on June 8, 1951, which policy was in full force and effect at the time of the accident. The limits of liability stated in the policy are as follows: "Bodily injury liability $25,000 each person $100,000 each accident". It is further provided in said policy that the insurer agrees
"to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time *191 resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."
On the day of the accident, the petitioner and his wife drove the car owned by petitioner and covered by the said liability insurance policy to Thibodaux, Louisiana, to a baseball game. Upon their return trip to Baton Rouge, some distance from Donaldsonville, petitioner's wife took over the driving of the car while petitioner went to sleep on the rear seat. The evidence shows that Mrs. McDowell was a competent driver, and had never had an accident during her some ten years of driving.
Shortly after Mrs. McDowell took over the driving, she was driving at a speed of forty-five to fifty miles per hour when the weather became foggy. She slacked her speed little, if any, although her visibility was reduced by the fog. She was approached by an automobile coming in the opposite direction, the driver of which neglected to give her his dimmers, although Mrs. McDowell signalled for his dimmers two or three times. She became blinded by his bright lights, and collided with another vehicle traveling in the same direction as Mrs. McDowell and on the same side of the highway. The first thing Mrs. McDowell saw of the automobile with which she collided was a "turning wheel". She attributes the accident to the blinding lights of the oncoming car and to the condition of the weather, both of which obscured her vision. Prior to the time that she took the wheel, the weather was clear.
As a result of the collision, the petitioner was knocked unconscious. He sustained a brain concussion, a serious injury to one of his eyes, necessitating its removal, a torn cartilage and several other bodily injuries leaving scars on his chin and eyelid. The lost eye has been replaced by a glass eye.
Prior to the accident, petitioner was employed as Captain of the Baton Rouge Fire Department and earned a salary of $275.50 per month. By reason of his physical impairment to his sight, he was demoted from the position of Captain to a Fire Alarm Operator at a salary of $213 per month.
The injuries required petitioner to spend seven or eight days in hospitals and he was incapacitated from any kind of work for four or five months. According to his own testimony and that of the doctors who testified in the case, the petitioner suffered great pain and now, long after the accident, he claims to have severe headaches which, one of the doctors stated, could easily be attributed to the injury.
Defendant first filed exceptions of no cause or right of action, which were overruled by the lower court. The defendant then filed answer denying most of the allegations of the petition but admitting the issuance of the insurance policy upon which the suit is predicated. It denies, however, any liability for the damages under the terms of said policy.
The lower court rendered judgment in favor of petitioner in the amount stated above. The defendant has taken this appeal.
The defendant assigns as errors committed by the lower court, the following reasons:
1. Louisiana Revised Statutes, Title 22, Section 655, for the year 1950, as Amended, which authorizes a direct action against an insurer does not contemplate an action of the nature herein alleged upon and in fact the statute prohibits such a suit as specifically set forth therein.
2. Plaintiff's petition and all of the evidence adduced specifically shows that plaintiff and plaintiff's wife were on a community mission in the nature of a joint venture and any negligence on the part of plaintiff's wife acting as the agent of the community is imputed under the law of Louisiana to plaintiff, her husband, and bars his recovery.
3. Both section 655, Louisiana Revised Statutes of 1950, as amended, and the judgment rendered herein by the Honorable Lower Court are in clear violation and contravention of the United States Constitution, *192 Article 1, Section 10, and the Fourteenth Amendment thereto.
4. Plaintiff's suit should be dismissed for the reason that the evidence introduced does not show that Mrs. McDowell was negligent and that her negligence was the proximate cause of the accident.
5. In any event and with all factors considered, the judgment rendered herein by the Honorable Lower Court exceeds a genuinely reasonable amount by more than one-half, and should be reduced.
We will discuss the alleged reasons of error by the lower court, in the order given above.
Defendant claims that LSA-R.S. 22:655, which provides for a direct right of action against the insurer, clearly states that it is the intent that defendant has the same defenses as the insured and that petitioner's right of action is subject to all of the lawful conditions of a policy or contract that could be urged by his wife, Mrs. McDowell. No cases are cited in support of its contention. The portion of the statute which is particularly referred to in its allegation that the same defenses are available to the defendant as are available to the insured, reads as follows:
"* * * It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state."
Our interpretation of the quoted portion of the statute is that the insurance company shall have any defenses in a direct action brought by the injured party that it would have to an action brought by its insured. Suppose, for instance that an injured party chose, instead of suing the insurer, to sue the insured party and was awarded judgment. There would be no question then that the insured party could sue his insurer for the amount collected by the injured party. The direct action statute merely gives to the insurance company any defense in the direct action which it might have had in an action by its insured.
In this case, although the policy of defendant was issued in the name of petitioner, according to the terms and conditions of the policy, the insured party, under the clear wording of the policy as will be discussed later, was Mrs. McDowell. Although the defendant has not indicated any defense in particular which he claims would come under the quoted portion of the statute, we assume that he means that the personal defense of coverture available to Mrs. McDowell to a suit instituted against her by her husband would, in this case, inure to the benefit of the defendant insurer. Such a situation, as we see it would not be covered by the provision of the statute. This defense would not have been available to the defendant (insurer) in a direct action against it brought by the insured (Mrs. McDowell). Recovery has been allowed in similar cases in our jurisdiction. Edwards v. Royal Indemnity Co., 182 La. 171, 161 So. 191; McHenry v. American Employers Ins. Co., 206 La. 70, 18 So.2d 656; Id., La.App., 18 So.2d 840, 843; Hardtner v. Aetna Casualty & Surety Co., La.App., 189 So. 365 and Scarborough v. St. Paul Mercury Indemnity Co., La.App., 11 So.2d 52.
The defendant next claims that petitioner and his wife were on a community mission in the nature of a joint venture and any negligence on the part of petitioner's wife would be imputed to petitioner and would bar his recovery in this matter. We feel that there is no doubt that the couple were on a community mission in the nature of a joint venture. In the event that suit had been instituted by a third party, the petitioner would have been held liable for the negligent acts of his wife under the rules pertaining to the principal and agent relationship. However, there is no third party suing in this case. The situation presented here is one where the principal is attempting to recover for the negligent *193 acts of his agent, and there can be no quarrel against recovery having been allowed many times in such a situation. In McHenry v. American Employers Insurance Co., supra, [18 So.2d 843] the court said:
"The Supreme Court has held that plaintiff may recover from his wife's insurer the damages sustained by him from her negligence. In view of this holding we cannot perceive any sound reason why he should be barred from recovery because, as head and master of the community, he could have been held to respond in damages to a third person injured by his wife. It certainly is not consistent to say that coverture in this case does not forbid the husband to recover from the wife's insurer and then say he may not recover because the wife was performing a service for the benefit of the community, a legal result of coverture, when the accident happened."
In Hardtner v. Aetna Casualty Co., supra, [189 So. 370] the court said:
"The only way or theory upon which negligence of one person may be imputed to another is under that of agency; and even where the relationship of master and servant, or principal and agent exists, the principal or master has a cause and right of action against the agent or servant for the damage the principal or master has suffered by the wrongful acts of his agent or servant."
In the instant case the wife, in driving the car, was acting as agent for the community of acquets and gains. As to any damages to third persons, the negligence of the wife would have been imputed to the husband, the principal in the community agency. Thus, he would have had no defense to an action instituted by third persons, under the circumstances of this case. However, in the agency relationship, the law allows the principal to recover from the agent for the damages sustained by the principal as a result of the negligent acts of the agent. The same principal would apply here. Although the petitioner could not have brought a direct action against his wife under our rules of coverture, the defense of coverture is personal to the wife and would not inure to the benefit of the insurance company herein. We, therefore, feel that the second assignment of error by defendant is without merit.
Defendant next contends that LSA-R.S. 22:655 and the judgment rendered below are in violation of the United States Constitution, Article 1, Section 10, and the Fourteenth Amendment thereto. It claims that the right of direct action given by the statute impairs the obligation of contract and deprives the defendant of its property without due process of law.
The said statute has been held constitutional. Churchman v. Ingram, La. App., 56 So.2d 297, 307. Furthermore, the defendant, being an insurer doing business in the State of Louisiana, has consented to be sued in Louisiana directly by an injured party. The policy itself provides:
"23. Terms of Policy Conformed to Statute. Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes."
In this connection, in Buxton v. Midwestern Ins. Co., D.C., 102 F.Supp. 500, 507, the court said that the insurer in return for the privilege of doing business, had consented to the direct action. "It cannot say yes or I do in one breath and no or I do not or will not in another."
Defendant's fourth contention of error is that the evidence failed to show negligence on the part of Mrs. McDowell and that her negligence was the proximate cause of the accident. On this point, the lower court stated as follows:
"Let us preface our opinion by saying that from the evidence adduced, Mrs. McDowell was guilty of negligence in the operation of the plaintiff's *194 car, which negligence was the proximate cause of the accident. It is true that the only evidence in the record bearing upon this question is that of Mrs. McDowell. Her account of the accident, however, is not disproved by direct, physical or circumstantial evidence. No explanation was made by either side as to who the party was into whose car Mrs. McDowell ran her car.
"However, Mr. T. B. Beale, Jr., representing the defendant company, testified that he interviewed the driver of the other car and on behalf of defendant paid the owner of the other car for the damage done his car by the collision. This payment presumably was made by defendant company because it was of the opinion that the collision was due to the negligency of Mrs. McDowell.

"Aside from this, the law is well settled that when the driver of an automobile is blinded by the lights of another car, he or she should reduce his or her speed to such an extent that the car can be stopped at once if faced with an emergency.
"In Mickens v. F. Strauss & Son, Inc., La.App., 28 So.2d 84, we find the following at page 87: `It has been repeatedly held that when visibility is materially impaired because of smoke, mist, dust, etc., a motorist should reduce his rate of speed to such extent and keep his car under such control as to reduce to a minimum the possibility of accident from collision; and as an extreme measure of safety, it is his duty, when visibility ahead is not possible or greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. Locke v. Shreveport Laundries, Inc., supra (18 La.App. 169, 137 So. 645).'
"There are many decisions of the Appellate Courts to the same effect."
Although Mrs. McDowell was the only witness who testified as to the actual cause of the accident, her evidence clearly shows that the accident was caused solely by her negligence in proceeding at too great a speed under the foggy conditions, and driving while being blinded by the headlights of an approaching car. Had she reduced her speed to what was reasonable and proper under the circumstances, she could have stopped within her vision and the accident would have been avoided. It is the established jurisprudence of this state that the driver of a vehicle is required to maintain such control over his automobile as to permit him to bring it to a stop within the range of his lights and it is further negligence in failing to decrease his speed when temporarily blinded by the headlights of an approaching vehicle. It is further well established as the jurisprudence of this state that when a driver of a vehicle finds that he is unable to see the road ahead of him, for any reason whatever, whether blinded by bright lights, smoke, dust, fog or for any other reason, it is his duty to at least bring his car under such control that it can be stopped in a moment in case of an emergency and in extreme cases, it is his duty to stop. See Rachal v. Balthazar, La.App., 32 So.2d 483 and Dauzat v. Kelone, La.App., 65 So.2d 924. Therefore, we are of the opinion that Mrs. McDowell was negligent and that her negligence was the proximate cause of her husband's injury. We are not of the opinion that this is one of the exceptional type of cases that would relieve Mrs. McDowell of negligence. Furthermore, even were we to consider that Mrs. McDowell's negligence was not the sole cause of the accident, but was merely a contributing cause, the petitioner would still have his right of action, as the courts have held that when a defendant is responsible for one, two or more proximate causes of an injury, he cannot escape liability because a third person is responsible for a concurrent proximate cause. Abrego v. Tri-State Transit Co., La.App., 22 So.2d 681, 683; Shield v. Johnson & Co., Ltd., *195 132 La. 773, 61 So. 787, 47 L.R.A., N.S., 1080.
Before proceeding with defendant's last assignment of error, that of quantum, we feel it our duty to dwell further on what we feel to be the major point at issue in this case, and which is a question res novo in our jurisdiction. This question is, can the husband, the named insured in a liability policy, recover from his insurer for injuries sustained by him as a result of the negligence of his wife, who is driving with his permission, under the terms of the policy.
Coverage A of the policy, which was introduced into evidence provides that the insurance company agrees:
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."
The policy further provides, in Section III, under Definition of Insured, as follows:
"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."
In the present case, it is clear from reading Section III of said policy, that Mrs. McDowell was an insured under the terms thereof. She was driving with the permission of the named insured. Furthermore, keeping in mind that Mrs. McDowell was the insured, and by reading Coverage A of the policy, it is clear to us that the company is liable, on behalf of the insured, for bodily injury, sickness or disease sustained by any person caused by an accident of the automobile. The terminology "any person" is a broad one. Had the company desired to qualify this phrase, they could easily have done so. As a matter of fact, the policy did list certain exceptions, or exclusions, one of which, as pertains to the property damage liability, reads as follows:
"(F) The policy does not apply * * * to injury to or destruction of property owned by, rented to, in charge of or transported by the insured."
This exclusion is clear, and relieves the insurer of liability for damage to property owned by, or in the charge of, the insured. Certainly had the insurer desired to relieve itself of liability for personal injuries to the named insured, it could easily have done so by inserting appropriate language to that effect into the policy.
As to the provisions of the policy, the lower court, found as follows:
"The liability insurance policy here involved operates for the benefit, not only of the named insured but for the benefit of any person driving the automobile with the permission of the named insured. Hence, it operated for the benefit of Mrs. McDowell. Here, let us again quote from the policy, Coverage A, as follows: The Insurance Company agrees `To pay on behalf of theassured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person.' The words `Any person' includes the named insured if he was a passenger in the automobile and the driver was the assured. See Hardtner v. Aetna Casualty & Surety Co., La.App., 189 So. 365. Let us quote from this decision, as follows:
"`Appleman's Automobile Liability Insurance, published in 1938, under the title "Bodily injury or Death of Named Insured", on page 135, has the following to say:
"`"An attorney unfamiliar with automobile insurance law might be inclined to feel this clause to be pure surplusage.

*196 It is conceded that the intention of an automobile policy is to protect the named insured and persons operating with his permission from legal liability, and is not intended to compensate the insured for his own injuries. It is a liability rather than a personal injury policy. In the absence of such a clause, however, the courts have had a sharp conflict of authority and the majority have permitted the named insured to recover for his own injuries. Of course the situation can only arise where a person other than the insured is operating the vehicle. The reason for the majority rule is not without logic. It is somewhat as follows: The insurer intends to protect any person operating with the insured's consent in every case. That operator may have an accident in which he becomes legally liable to the insured for his negligence in operation. If the insurer denies a recovery, then it is not affording complete protection to the additional insured. Since it purports to render complete protection by the omnibus clause the rule of strict construction against the company must be applied. By applying this rule favorably to the additional insured the accident is covered and the named insured permitted to recover."'
"Obviously, the reasoning of the Courts in holding as they do on this question is that the Insurance Company could exclude in no uncertain terms itsnamed assured, and by failing to do so, accepts liability to its named insured if it has adopted another assured who operates the vehicle and negligently causes injury."
Under the holdings of the Hardtner and McHenry cases the petitioner should be allowed recovery from his insurer for injuries suffered from the negligence of his wife, the insured under the omnibus clause of the policy.
As to any question relative to negligence on the part of petitioner, we feel that there was none. The facts show that Mrs. McDowell had been driving a car for some ten years. Testimony shows that she had, on several occasions, driven at night. She had never had an automobile accident. On the night in question, and at the time of the accident, petitioner was on the back seat asleep. We do not feel that these facts show any negligence whatsoever on the part of petitioner.
As to the question as to whether recovery in this suit would unjustly enrich the community existing between petitioner and his wife, the Supreme Court, in McHenry v. American Employers Insurance Co. [206 La. 70, 18 So.2d 658], stated: "* * the community will not be enriched but will only be reimbursed for the loss it has sustained as a result of the accident."
The lower court gave judgment for petitioner in the total sum of $17,924.50. The petitioner claims said sum to be inadequate, whereas the defendant claims it to be excessive.
Of said sum, $15,000 was allowed for permanent disability sustained by petitioner, including the loss of his eye. The petitioner was 28 years of age at the time of the accident. Because of the loss of the eye, he was reduced from rank of Captain in the Fire Department, paying a salary of $275.50 per month, to that of Beginner Fire Alarm Operator, paying a salary of $213 per month. Under the Mortality Table, LSA-R.S. 47:2405, petitioner had a life expectancy of 36.73 years at the time of the accident. While there was the possibility of advancement from the rank of Captain, there is now a possibility of advancement from the rank of Beginner Fire Alarm Operator. The evidence shows that, because of the injuries, petitioner lost some six months from his work. Under the circumstances, we believe that the allowance of $15,000 was neither inadequate or excessive.
The lower court further allowed $2500 for pain and suffering, $211.50 for medical bills, $33 as hospital bills and $140 as cost of a permanent glass eye. The evidence shows that the injuries, especially to the *197 eye, were extremely painful. Petitioner, at the time of trial, was still suffering from headaches, a likely result of said injuries. We believe that the damages, as awarded, were proper.
For the reasons assigned, the judgment of the lower court will be affirmed.
Judgment Affirmed.
ELLIS, Judge (dissenting).
Plaintiff has reurged its exceptions of no right or cause of action which the learned trial judge under the authority of McHenry v. American Employers Ins. Co., 206 La. 70, 18 So.2d 840, and Hardtner v. Aetna Casualty & Surety Co., La.App., 189 So. 365 felt "constrained to overrule."
There is no doubt that the plaintiff, the named insured, and his wife, the additional insured, were on a community mission in the nature of a joint venture. The majority opinion found this to be a fact and stated: "We feel that there is no doubt that the couple were on a community mission in the nature of a joint venture." Again in the opinion it is stated: "In the instant case the wife, in driving the car, was acting as agent for the community of acquets and gains." With both of these statements I thoroughly agree, however, the majority based its decision upon the McHenry and Hardtner cases. In my opinion, the McHenry case is entirely different from the case at bar.
The Supreme Court found the facts of the McHenry case as established by the record to be [206 La. 70, 18 So.2d 657]:
"That the accident happened solely from the carelessness and actionable negligence of Mrs. McHenry; that at the time of the accident she was acting within the scope of her employment and had begun a mission in the interest of her said employer",
and stated the question for decision to be:
"In view of the related facts and findings, is the plaintiff entitled to recover from the insurer the damages, in whole or part, for which he sues?"
Additional facts which were considered by the Supreme Court were stated to be:
"Plaintiff is the husband of Mrs. Bessie D. McHenry, between whom the community of acquets and gains exists. Mrs. McHenry, on the date of the accident involved herein, was in the employ of the Welcome Wagon Service Company, and had been so employed for several years. When the accident occurred there was in force an automobile liability insurance policy issued by defendant, American Employers' Insurance Company, wherein Mrs. McHenry and the Welcome Wagon Service Company were named as `the insured.' The automobile involved in the accident is specifically covered by said policy.

* * * * * *
"In the morning of June 28th, 1941, Mrs. McHenry, while backing the insured automobile from the premises of herself and husband, lost control thereof and it struck plaintiff, the husband, inflicting serious and painful injuries to him. He instituted this suit against said insurer (reserving his right to sue the Welcome Wagon Service Company) to recover damages sustained by him, alleging that the accident was caused solely by the negligence, in several respects of Mrs. McHenry * * *."
Thus it is clear that in that case the wife was not on a community mission at the time of the accident, the husband was not in the automobile, was not in control nor did he have the right to control the automobile at the time of the accident; he was not a party to the contract of insurance, whereas in the present case it is admitted that at the time of the accident the wife was operating the car with the husband's permission and consent and he was in the car and he was the named insured in the policy while his wife was the additional insured under the omnibus clause. Under these facts I do not think that the *198 McHenry case is controlling or that the language used by the learned Judge of the Second Circuit and quoted in the majority opinion should be controlling in this case where the facts are entirely different.
As to the Hardtner case, supra, on the question of the right of a named insured to sue his or her own liability insurer, I respectfully disagree. Briefly stated, the Hardtner case adopted the view expressed in some other jurisdictions that should the insurance company wish to exclude the named insured from suing his or her own liability insurer it should have specifically inserted a clause or paragraph to that effect. I feel and believe that the opposite view as shown by cases in other States and as cited and discussed in the Hardtner decision to be more logical in the light of the terms and conditions of the policy in question. The liability policy in the case under consideration imposes on the plaintiff the following obligation among others:
"Assistance and Cooperation of the InsuredCoverages A, B, C, D, E, F, G. H. I. and J. The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."
I agree with the views expressed in Johnson v. Employers Liability Assurance Corporation, 158 Misc. 758, 285 N.Y.S. 574, 580, which is cited, commented upon and quoted in the Hardtner case as follows [189 So. 373]:
"In this case the `omnibus cover' protected the operator of the automobile from liability to `any person', the same provision interpreted in the cases heretofore quoted from. The Johnson case held as follows: `View it any way we may, the facts remain that plaintiff's policy, his contract with defendant, was one of indemnification for liability, and that he was a privy thereto for such expressly declared purpose. This contract is the basis of the present action. He sues upon it, not for indemnification, but, divorcing himself as a privy thereto, he sues upon it to be compensated for injuries caused by his licensee, who, by his, the plaintiff's act, procured the instrument and used it and thereby caused him harm. True, the "omnibus cover" protected Durking, plaintiff's licensee, from liability to any person, but it did so only while he was operating plaintiff's automobile with the latter's consent. This protection was thus extended not as a separate and independent agreement with Durking, and apart from the real subject-matter and paramount purpose of the policy. Indeed this extension of protection is inseparably connected with such purpose. The statutes (Vehicle and Traffic Law, § 59; Insurance Law, § 109) render this certain. The extension of protection was a detail of the protection afforded plaintiff the named assured. It merely afforded additional protection which covered his extended statutory liability. Plaintiff therefore cannot assume the role of "any person" and thus divorce himself from his status as one of the two contracting parties, whose contract was made to protect him from the demands of such person. To hold otherwise would be to read into the policy another contract, one well known in the science and business of insurance, but certainly absent here, namely, one for personal accident insurance. Consideration of other features of the policy in question confirm these views. It is impossible to harmonize a contrary view with plaintiff's affirmative obligations under the contract having to do with co-operation in resistance of unjust demands, and hopeless confusion attends such a view when adherence is called to the subrogation provisions *199 of the policy. Plaintiff's unavoidable status as privy to the contract in question presents the anomaly here of this being a suit, in effect, against himself. For he must sue upon his own policy, not that of Durking. For Durking had no contract separate and apart from his. The protection plaintiff contracted for on account of Durking's act he does not seek. Even under the omnibus coverage, that is all the contract affords him.'"
In a recent brief in the case of Messina v. Audubon Ins. Co., La.App., 67 So. 2d 143, involving the same question but which this Court found unnecessary to pass upon, the Hardtner case was distinguished on the following grounds:
"* * * For example, the reported decision does not show whether or not the policy provisions we have quoted were in the policy involved in that case. The Hardtner case, moreover, is distinguishable because: (1) There the named insured was instantly killed and couldn't `co-operate' or harm the insurer by `non-cooperation,' or attempted admissions of fault; (2) there the `additional insured' under the omnibus clause who caused the death of the owner-insured was not a `spouse or member of the family of the named insured' as in the present case; and (3) our Supreme Court in the meantime in the Brantley[19] case by overruling of Adams v. Golson[20] has established at least a limited `family purpose doctrine.'"
For the brief reasons given, I am of the opinion that the exception of no right or cause of action should have been sustained and plaintiff's suit dismissed.
I believe it to be my duty to further express my views on the merits of the case and in doing so I do not wish to convey any impression that I am not of the firm opinion that the exception should have been sustained. With this understood, I am of the opinion that on the merits of the case the plaintiff has failed to bear the required burden of proof.
The only testimony we have as to the accident is that of plaintiff's wife who was driving the car at the time while he took a nap on the back seat. As the testimony is rather brief it can be used to speak for itself rather than by a summation. It is as follows:
"Q. Tell the Court how you happened to be out there? A. Well, my husband and I went to a ball game in Thibodeaux, and after the ball game was over we left and started to come back home, and out of Donaldsonville my husband was going fishing the next morning and he wanted to take a napso he asked me if I wanted to drive, so I started driving and right about fifteen minutes,it was misty, and right out of Plaquemine this car was coming toward me and I gave him the dimmers two or three times and he didn't dim his lights and when the car passed me I was blinded and I ran into the back end of the car that was in front of me.
"Q. Where was Mr. McDowell all this time? A. He was asleep on the back seat.
"Q. Will you describe the weather when you started driving out of Donaldsonville? A. The weather was clear when I started driving.
"Q. About how long had you been driving from Donaldsonville until the accident happened, more or less? A. Well, it was just a few minutes.
"Q. About how long would you say? A. Fourteen minutes.
"Q. Do you know how far it is between Donaldsonville and Plaquemine more or less? A. Approximately fourteen or fifteen miles.

*200 "Q. And you say the accident happened just out of Plaquemine? A. Yes.
"Q. Before you arrived into Plaquemine? A. That's right.
"Q. What was the first time that you saw the car in front of you before you ran into it,rather what was the first thing that you saw of the car in front of you before you ran into it? A. As if a wheel was turning in front of me.
"Q. About how fast were you driving? A. Approximately forty-five to fifty miles an hour.

* * * * * *
"Q. How many times did you dim your lights to the other car? A. Two or three times.
"Q. Were his lights bothering you? A. They were blinding me; I couldn't see.
"Q. And you say you were traveling between forty-five and fifty miles an hour? A. That's right.

* * * * * *
"Q. What condition was the weather at the time you left Thibodeaux? A. It was clear.
"Q. Where did it change? A. I would say I started driving out of Donaldsonville and I had been driving a few minutes when it got mistylike.
"Q. About how many miles? A. About fifteen minutes I would say, fourteen or fifteen minutes.
"Q. How fast were you driving when you left Donaldsonville? A. Well, when I left Donaldsonville I was driving about forty-five or fifty miles an hour.
"Q. You drove at the rate of fortyfive or fifty miles an hour from the time you took over the wheel until the accident occurred, is that correct? A. Well, yes.
"Q. Beg your pardon. A. Yes.
"Q. You didn't check your speed when you hit the fog? A. No.
"Q. I didn't understand? A. I might have a tiny bit.
"Q. You don't know whether you checked your speed or not, is that correct? A. I didn't notice.
"Q. I beg your pardon. A. I checked it maybe a little bit but I didn't slow down or stop.
"Q. How little? A. I would say to about 42.
"Q. You slowed down to 42? A. I slowed down and then I speeded up again."
Under the general rule one who runs into a parked or moving vehicle is negligent, however, there is an exception to this rule. Lovelace v. Gowan, La.App., 52 So.2d 97; Gaiennie v. Co-operative Produce Co., 196 La. 417, 199 So. 377; Rea v. Dow Motor Co., La.App., 36 So.2d 750; Lynch v. Fisher, La.App., 41 So.2d 692.
It was incumbent upon the plaintiff to prove by sufficient facts that the case at bar did not come under the exception to the general rule. It will be seen from the testimony that the wife of the plaintiff was driving at a most reasonable rate of speed and she fails to testify that she was blinded in the least by the mist. It will be noted that she referred to the condition of the weather by saying: "It was misty." I would not interpret this as meaning any condition of the weather that was blinding or affected her vision in driving. She did testify to a car coming toward her which evidently had bright lights as she gave him the "dimmers two or three times, and he did not dim his lights," and she next says, "When the car passed me I was blinded and I ran into the back end of the car that was in front of me." In connection with this testimony it is well to recall her testimony as to the first thing that she saw of the car in front of her before she ran into it, and her answer was "As if a wheel was *201 turning in front of me." As I understand this testimony, plaintiff's wife was driving along at a reasonable rate of speed with nothing to impair her vision for if the mist was a thick fog it was plaintiff's duty to prove it, and there is no such testimony. In the ordinary course of traveling at night she approached a car coming toward her with bright lights; she does not say that she was blinded immediately by these lights but states that she dimmed her lights two or three times and evidently kept traveling. She does not state the distance between her car and the approaching car with the bright lights at the time she dimmed her her lights, and she does not testify at that time that she was blinded, therefore, there was no necessity for her to slow down. It was only when the car "passed me I was blinded." No where in her testimony or in the record does it show that she saw the car in front of her until she struck it just after passing the approaching car. She never testified that the car in front of her did or did not have tail lights. She never testified whether the car was going forward or backward or whether it could have been stopped in the road. It is only by her testimony that when she first saw the car it was "as if a wheel was turning in front of me that we might guess it was moving. When one sees the turning wheels of a car without seeing or mentioning havingseen any tail lights, there is a strong presumption that there were no tail lights. There is no testimony as to the kind, make or age of the car the plaintiff struck. The fact that the wife did not see anything between her car and the approaching car with the bright lights is also strong evidence in my opinion that the case comes under the exception to the general rule. There is no positive, direct testimony in answer to a direct or positive question as to just what plaintiff's wife did when the car was approaching with the bright lights other than dim her lights two or three times. There is an inference that she continued at 45 or 50 miles per hour because she did not say that she slowed down. There is no reason why the plaintiff's wife should not have furnished complete testimony, if it were true, to remove this case from the exception.
In his reasons for judgment the Trial Judge of the Lower Court stated that a representative of the defendant company testified that he interviewed the driver of the other car and on behalf of defendant paid the owner of the other car for the damage done in the collision, and he observed that this payment presumably was made by the defendant company because it was of the opinion that the collision was due to the negligence of plaintiff's wife. At the time this testimony was sought, an objection was made and it was the Court that then elicited from the witness the fact that the defendant company had compromised the claim and the Court then remarked: "Mere payment don't establish fault." In this he is correct.
For the above reasons, I am of the opinion that the plaintiff has failed to bear the burden of proof incumbent upon him and on this ground should be denied recovery.
If one should accept the finding of the majority that plaintiff's wife was negligent, then the plaintiff could not recover as it is admitted that she was the agent of her husband on this occasion and he was also an occupant of the car, and the fact that he was asleep at the actual time of the accident would not change his responsibility for the results of his wife's negligence.
In Weitkam v. Johnston, La.App., 5 So.2d 582, 583, the owner of the car was having his daughter drive it "returning from a visit, the purpose of which the record does not disclose", and the Court held:
"Miss Wietkam, at the time, was operating her father's car and was his agent, and therefore, because of her negligence, he is precluded from recovery since her negligence is to be imputed to him. See Gannon v. New Orleans Ry. & Light Co., 154 La. 435, 97 So. 601."
See also Wolfe v. Toye Bros. Auto & Taxicabs Co. Inc., 18 La.App. 321, 138 So. 453, 454, in which the Court stated:

*202 "There is no doubt that a parent merely by reason of the relationship is not responsible for negligent acts of his or her major children; but here we find from the evidence that the automobile in question belonged to Mrs. Hardie; that she was riding therein; and that, according to her statement, it is probable that she had asked her son to drive her to the railroad station to meet her parents. It is quite true that on various prior occasions the son, on his own initiative, had driven to the station to meet defendant's parents, his grandparents, and it is equally true that, had an accident occurred on those occasions, in all probability there would have been no liability in Mrs. Hardie; but here it appears that the son, though a major, * * * was driving her in her car, and we feel that thus on this particular occasion he was acting as the agent of his mother, and that she should be responsible for the results of his negligent deeds while so acting."
In Vol. 12 of Louisiana Law Review at pages 323-327 Mr. Garner R. Miller discusses similar cases, and in reviewing these cases and Buquet v. St. Amant, La. App., 55 So.2d 645 he had this to say:
"If the purpose of the journey is for the benefit of the owner, even though it is also for the benefit of him who is permitted to drive, the owner under principles of agency is regarded as master of the driver even though no wages or reward other than the participation in the drive is paid to him. It has been stated that where an owner occupies the car at the time of the accident he is liable for the negligence of the driver if (1) he has not abandoned his right to control the car or (2) if he exercises or has a right to exercise any control over the driver or the operation of the car, or (3) if the ride is for his benefit or for the mutual benefit of himself and the driver. An examination of the language of the court in the Buquet case would lead one to the conclusion that the case falls within the scope of the law of agency."
Therefore, under the above authorities plaintiff could not recover.
Furthermore, the plaintiff being in the car himself with the right to control and supervise even if the driver had not been his wife and agent, he should be denied recovery.
In Monroe v. Heard, La.App., 168 So. 519, 522, this Court held:
"The liability of the occupant of an automobile driven by another under his direction and control is stated in 42 Corpus Juris at page 1123 as follows: `So likewise where the occupant, although he is not the owner and is not driving the vehicle himself, is in actual control of its operation, or where he has the right to control and direct the driver and fails to do so, or where, being in control, he permits another to drive, he will be held responsible for an injury sustained by a third person by reason of the negligent operation of the vehicle.' In support of that proposition the case of Smith v. Sladovich, 3 La.App. 527, is cited in the footnotes. In the Smith v. Sladovich case, the court said: `If Rosengarten, Junior, had been the owner of the car, there could have been no question of his liability. We think he is in the position of owner so far as his responsibility for the operation of the car is concerned.'"
See also Lyle v. Guillot, La.App., 143 So. 511; Mustin v. West, La.App., 46 So.2d 136; Huerstel v. L. Mangano & Co., La. App., 39 So.2d 460; Vol. 5, Am. Jur. "Automobiles", § 354; Grantham v. Smith, 18 La.App. 519, 132 So. 805, 810; Smith v. Sladovich, 3 La.App. 527.
Another reason that plaintiff should not recover under the facts in this case is because he and his wife were at the time engaged in a joint venture. See Squyres v. Baldwin, 191 La. 249, 185 So. 14; Buquet v. St. Amant, La.App., 55 So.2d 645. In view of the community mission, the *203 agency and joint venture, the negligence of the wife is imputed to the plaintiff and he is not entitled to recover.
The majority opinion on the question of agency cites Hardtner v. Aetna Casualty Co., supra, and quotes therefrom. On page 370 of 189 So. of the Hardtner case, directly following the quotation in the majority opinion, it is stated:
"In the case of Costa v. Yochim, 104 La. 170, 28 So. 992, 993, the court said: `While the master is liable to third persons for injury arising from his servant's negligence within the scope of his employment, if the master is free from fault as to negligence in question he may have his remedy against his servant for damages to which he is thereby subjected, and the measure of damages, in such case, is the amount of the recovery against the master.'"
Under the above quoted authority, it is clear that a master cannot recover from his servant unless he is free from fault as to the negligence in question. In the present case the plaintiff is not free from fault as the negligence of his wife is imputed to him.
The Hardtner case, supra, was before the Second Circuit only on an exception of no cause or right of action and the only thing decided was that the affirmative allegations of the plaintiff's petition did not show on their face independent, contributory or imputed negligence, and the Court therefore overruled the exception. The case was not tried on its merits. Had it been, the defendant would not have been debarred from attempting to show that the deceased Hardtner was guilty of either independent, contributory or imputable negligence.
As to the language used by the organ of the Court in the McHenry case and which is quoted in the majority opinion, it must be construed in the light of the facts and circumstances as stated by the Supreme Court when the case was before it which formed the basis for the answer to the question certified to that Court.
In the case of Levy v. New Orleans & Northeastern R. Co., La.App., 21 So.2d 155, 156, on an application for a rehearing in its per curiam the Orleans Court of Appeal distinguished the McHenry case and said:
"* * * The Court held that in such a case the community is not profiting as a result of the negligence of the wife but is merely being permitted to obtain reimbursement for a loss already sustained. There, however, the automobile, which the wife was driving, was not being operated by her in the interest of the community, since from the statement of facts it appears `* * * that at the time of the accident she (the wife) was acting within the scope of her employment (by Welcome Wagon Service Co.) and had begun a mission in the interest of her said employer.'
"Here we have held that the plaintiff cannot contend that the car was not being used on a community errand and we think that it would be stretching the very liberal doctrine of the McHenry case beyond the breaking point to hold that the community might recover for loss caused by the negligence of a member of the community while engaged on a community mission."
In conclusion, I am therefore of the opinion that the exception should havebeen sustained and that on the merits the plaintiff should be denied recovery, having failed to bear the burden of proof, and in any event the wife's negligence was imputable to him, so as to bar his recovery.
I therefore respectfully dissent.
NOTES
[19] Brantley v. Clarkson, 217 La. 425, 46 So.2d 614.
[20] 187 La. 363, 174 So. 876."